**WESTERHEIDE TOBACCO & CIGAR COMPANY, Appellant,**

v.

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI, DIVISION OF EMPLOYMENT SECURITY, and Michael Colvin, Respondents.**

**No. 51622.**

Missouri Court of Appeals, Eastern District, Division One.

Feb. 3, 1987.

Thomas J. Prebil, St. Louis, for appellant.

James B. Crenshaw, Jefferson City, for Labor & Indus. Relations.

Sandy Bowers, Jefferson City, for Div. of Employment Sec.

Fred Roth, Clayton, for Colvin.

CRIST, Judge.

Westerheide (employer) appeals from a judgment of the circuit court affirming a decision of the Labor and Industrial Relations Commission (Commission) awarding unemployment benefits to Michael Colvin (claimant). We affirm.

Claimant worked for employer most recently as inside help. In January and February of 1985, claimant worked the equivalent of six eight-hour working days. Claimed filed for unemployment benefits claiming he had been let go due to lack of work. Employer contested the claim and asserted absenteeism was the cause of the dismissal.

Claimant had his claim denied by a deputy who found claimant was disqualified under § 288.050, RSMo (1978) for having been

discharged for misconduct connected with work.

Claimant appealed this ruling to an appeals tribunal as provided under § 288.190, RSMo (1978). A hearing was held in which claimant and employer's president testified. The appeals referee found that although claimant may have had legitimate reasons for being absent some of the time, he failed to properly report his absenteeism under employer's guidelines which required workers to call and report their absence on a daily basis. The appeals referee found claimant's excessive absenteeism was a substantial, willful disregard of employer's interest and amounted to misconduct connected with his work.

Claimant then appealed to Commission as provided for in § 288.200, RSMo (1978). While not explicitly explaining why it was reversing the appeals referee, Commission, with one of its three members dissenting, found claimant was told by employer's president that he was being laid off due to lack of work. Commission found there to be no evidence the discharge on March 1 was for misconduct connected with claimant's work.

■ Employer appealed this decision first to the circuit court, which affirmed, and now to this court. On appeal, we review the decision of Commission and not the circuit court. *Diversified Asphalt, Inc. v. Labor and Industrial Relations Commission*, 622 S.W.2d 716, 719 [1] (Mo.App. 1981). We review to decide whether the decision is authorized by law and supported by competent and substantial evidence. § 288.210, RSMo (1978); *Howard v. Labor and Industrial Relations Commission*, 671 S.W.2d 826, 827 [1] (Mo.App.1984). Deference must be given to Commission, as trier of the facts, in its assessment of credibility, and we must view the record in a light most favorable to Commission's findings with all reasonable inferences in support of those findings. *Fruehauf Div., Fruehauf Corp. v. Armstrong*, 620 S.W.2d 67, 68 [2] (Mo.App.1981).

Employer claims the decision of Commission was against the weight of the evidence

and the issue as to whether claimant's actions constituted "misconduct connected with his work" is a question of law to which we are not bound by Commission's findings.

■ To put the Commission's findings in its most favorable light, the credibility of claimant will be judged favorably and the testimony of employer's president will be totally discounted. Even though the appeal referee, the only decision-maker to actually view the witnesses, placed greater credence in employer's president, Commission was free to totally disregard this. *Husky Corp. v. Labor and Industrial Relations Commission*, 628 S.W.2d 378, 379 [2] (Mo.App.1982).

■ In its most favorable light, but tempered by claimant's admissions, claimant's testimony was as follows. Claimant was a driver for employer. Due to a previous injury, he was in the hospital a couple of times in October of 1984. His work attendance thereafter was sporadic. Another person was assigned to drive and claimant, upon his return, was told the other person couldn't be taken off the truck. He was also told he wasn't put back on the truck because employer didn't know when, or if, claimant would be in to work. He was given a reduction in pay in January because he was working inside and not driving a truck anymore. He admitted he only worked approximately six eight-hour days from January 1, 1985 until March 4, 1985. He admitted he was aware of employer's rules which required phone calls as a minimum notice each day an employee would be absent or tardy and three consecutive days absence without personal notification was considered a resignation. He admitted some of the time off was for personal reasons. He also said he had two statements from his doctor that he shouldn't go to work. The first was for January 26 to February 1 and was given to employer's president. The other one, which was to cover from February 1 to February 14, was never given to employer's president.

These medical statements were not produced nor admitted into evidence.

Claimant said the last day he worked was Thursday, February 14. On the 15th, claimant called in and told a fellow employee he couldn't work because his wife was sick and had to be taken to the hospital. On Sunday, the 17th, claimant tried to call employer's president but couldn't reach him. He then called a fellow employee and said he wouldn't be in Monday. On Monday evening, the 18th, claimant talked to the wife of employer's president. He told her his spouse was still in the hospital and his injury was bothering him and he didn't know when he would be back to work. Claimant said wife told him he didn't have to call back employer's president. On Wednesday evening, the 20th, claimant again spoke to wife and told her things were the same and he wouldn't be in for the rest of the week. Wife said she'd tell her husband. In the evening, on either the Tuesday or Wednesday of the next week, the 26th or 27th, claimant talked to employer's president and asked if he still had a job. Claimant said he was told to take the rest of the week off and to come in in person the following Monday to talk. Claimant says he indicated he was ready to return to work.

On Monday, March 4, claimant says he went to work early and found no one there. He says he was worried because he knew what the answer would be. He left before anyone showed up, went to a restaurant and called back later. Claimant said he talked to employer's president who said there wasn't enough work to be done and he couldn't lay off employees hired after claimant. He was told to call in a couple of weeks. Claimant said he called seven to ten days later and was told there was no work.

We cannot say the decision of the Commission was against the weight of the evidence or incorrect as a matter of law. Claimant failed many times to comply with employer's work rules concerning daily reports regarding tardiness and absenteeism. He admitted his ill-reported history of tardiness and absenteeism. However, he also testified his employer told him he was discharged because there was no work available. We cannot say claimant's credibility was totally or completely destroyed.

Judgment affirmed.

SATZ, P.J., and KELLY, J., concur.