Thomas J. DAVIS, Respondent,

v.

RESEARCH MEDICAL CENTER, Appellant.

No. WD 49100.

Missouri Court of Appeals, Western District, En Banc.

April 25, 1995.

As Modified May 30, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

---

John R. Fox, Fox, Stretz & Quinn, P.C., Kansas City, for appellant.

Aldo P. Caller, Steven J. Borel & Associates, Kansas City, for respondent.

Before FENNER, C.J., and KENNEDY, LOWENSTEIN, BERREY, ULRICH, BRECKENRIDGE, HANNA, SPINDEN, SMART, ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

Research Medical Center ("Research") appeals the decision of the Labor and Industrial Relations Commission ("Commission") awarding worker's compensation benefits to

Thomas J. Davis for back injuries he allegedly sustained while working for Research.

Davis had been employed by Research for nearly thirteen years as a maintenance mechanic. His duties included repairing equipment, plumbing, electrical, heating and cooling and similar activities. Davis' claim for worker's compensation stems from an alleged injury to his back while moving a refrigerator at work on May 1, 1992 which resulted in surgery on May 7, 1992. The Administrative Law Judge ("ALJ") issued findings of fact and rulings of law on March 16, 1993, finding in favor of Research and denying benefits. Davis appealed and the Commission reversed, concluding that "Davis suffered an injury arising out of and in the course and scope of his employment on May 1, 1992, under the provisions of the Missouri Workers' Compensation Law." The Commission found Davis was entitled to his medical costs and to benefits for his temporary and total disability as well as for a 15% permanent partial disability. Research appeals the Commission's decision awarding benefits to Davis.

Research raises two points on appeal. First, it claims the Commission's award is clearly contrary to the overwhelming weight of the evidence in that the event of May 1, 1992 did not trigger, precipitate or induce Davis' need for surgery on May 7, 1992 and that there is not substantial competent evidence in the record to warrant the making of the award. Second, Research claims the Commission's award is predicated upon the adoption and erroneous application of the "treating physician rule," contrary to Missouri law.

In its original brief, Research devoted approximately fifteen pages to discussion and argument regarding the proper standard of appellate review to be applied in this case, and concluded by stating:

> [T]he reviewing court has the duty to examine the entire record in its determination as to whether or not the Commission's award is supported by substantial and competent evidence and if it is not or, if it is clearly contrary to the overwhelming weight of the evidence, the award must be set aside. Appellant argues that this court

should consider the dissenting opinion and the contrary findings by the administrative law judge as probative of the issues as to whether or not the Final Award is supported by substantial competent evidence, and whether the Final Award is clearly contrary to the overwhelming weight of the evidence.

The case was first heard in division but, before opinion, this court, on its own motion, ordered that it be reheard *en banc,* and directed the parties to submit supplemental briefs on the following questions:

1. What is the proper standard of appellate review in cases in which the Commission rejects its ALJ's views concerning the credibility of witnesses who testify in person at the hearing before the ALJ?

2. Should this court deem the Commission's view of witness credibility to be conclusive when the Commission gives an explanation for rejecting its ALJ's credibility rulings in respect to witnesses who testify in person at the hearing before the ALJ?

3. When the Commission explains why it rejects its ALJ's credibility ruling, to what extent should this court review that explanation?

## I.

We first address the proper standard of review. At the outset, we point out that our discussion is focused on the standard of review with respect to factual issues. The law is, and has been for many years, well settled that when it comes to review of questions of law, our review of the Commission's decisions is *de novo.*

> [A]wards of the commission 'which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correction. And where the finding of ultimate fact is reached by the application of rules of law instead of by a process of natural reasoning from the facts alone, it is a conclusion of law and subject to our reversal.'

*Merriman v. Ben Gutman Truck Serv., Inc.,* 392 S.W.2d 292, 297 (Mo.1965) (citations

omitted) (*quoting Williams v. Anderson Air Activities,* 319 S.W.2d 61, 65 (Mo.App.1958)).

Research cites and discusses a large body of federal case law in support of its position. However, we find it unnecessary to look to the federal courts for guidance on the subject. While some confusion has developed over the last fifty years with respect to the standard of review to be used in appeals from awards in workers' compensation cases, no doubt based on the repetitive paraphrasing of that standard in the many cases coming before the appellate courts, we find earlier decisions of our Supreme Court controlling and merely seek to eliminate some of the inaccuracies that have developed in Court of Appeals' decisions over the years.

## BACKGROUND

In April, 1925, the General Assembly passed and the Governor signed what was to become Missouri's first Workers' Compensation Law. *See* Laws of Mo. 1925, pp. 375–407. This statute was then referred to the citizens of Missouri, who, at an election held pursuant to art. IV, § 57 of the Missouri Constitution of 1875 (as amended in 1908), approved the law on November 2, 1926. R. Robert Cohn, *History of Workmen's Compensation Law, reprinted in* 15 V.A.M.S. 17–52 (1965), at 17; Laws of Mo. 1927, pp. 490–522.[1]

The Missouri Workers' Compensation Law was originally administered by a three-member board known as the Missouri Workmen's Compensation Commission whose three members were to hear the evidence and decide all compensation cases arising throughout the state. Under the original Law, one member of the Commission was to be a representative of industry, one a representative of labor or the employee, and the other a representative of the public. Thousands of cases soon made it impossible for the Commission to cover the state and handle all matters over which it had jurisdiction. In 1929, the Law was amended to provide for five referees who were given original juris-

diction to hear cases and approve settlements, so as to take some of the load off the members of the Commission. John D. Steele, *History, Administration and Jurisdiction, in Missouri Workers' Compensation Law* § 1.6 (1988); Cohn, *supra,* at 26. Various methods were used to maximize the utility and value of the referees. Sometimes the full Commission would receive live oral testimony from both sides' witnesses. *See, e.g., Sanders v. Central Bldg. Materials Co.,* 43 S.W.2d 863, 864 (Mo.App.1931). Sometimes a single member of the Commission would hear the evidence offered by both sides and enter an award which, upon proper request by an aggrieved party, was reviewed by the full three-member Commission. *See, e.g., State ex rel. Kenney v. Missouri Workmen's Compensation Comm'n,* 225 Mo.App. 501, 505, 40 S.W.2d 503, 505 (1931); *Freese v. St. Louis Pub. Serv. Co.,* 58 S.W.2d 758, 759 (Mo.App.1933); *Wright v. Penrod, Jurden & Clark Co.,* 229 Mo.App. 1147, 1148, 88 S.W.2d 411, 412 (1935). There were even cases where some of the testimony was taken before a referee and further testimony was received at a hearing before one of the Commissioners prior to review by the full Commission. *See Rogers v. Reorganization Inv. Co.,* 200 S.W.2d 563, 567 (Mo.App.1947). Of course, the full Commission sometimes chose to review a referee's award based on a transcript of the oral testimony and copies of the documentary evidence, such as medical records and depositions. *See, e.g., Waterman v. Chicago Bridge & Iron Works,* 328 Mo. 688, 693, 41 S.W.2d 575, 576 (1931); *Hohlstein v. St. Louis Roofing Co.,* 49 S.W.2d 226, 227 (Mo.App.1932).

In 1946, a three-member board with essentially the same makeup as the old Workmen's Compensation Commission was created. Known as the Industrial Commission of Missouri, it was given exclusive authority to review the awards made by the referees and to modify existing awards under certain circumstances. In addition, the maximum authorized number of referees was increased to twelve. Steele, *supra,* § 1.7; Cohn, *supra,*

---

1. For a thorough historical discussion of the long and sometimes bitter democratic process which ultimately led to the adoption of Missouri's workers' compensation law, *see* Cohn, *supra,* at 17–

24; and *State ex rel. Elsas v. Missouri Workmen's Compensation Comm'n,* 318 Mo. 1004, 2 S.W.2d 796 (banc 1928).

at 29. Under this arrangement, the Industrial Commission was "now acting more as an appellate body, which is in contrast to the functions of the old Commission." Cohn, *supra,* at 30. The Industrial Commission of Missouri is now known as the Labor and Industrial Relations Commission of Missouri and referees are now known as ALJs.[2] In most cases, the Commission reviews the award entered by the ALJ on the basis of a transcript of the hearing held by the ALJ and the briefs filed by the parties. However, the Commission occasionally elects to receive further evidence or hear additional testimony relating to the claim in connection with its review of the ALJ's award and it often takes evidence in connection with an application to modify an existing award. Steele, *supra,* § 1.7; *Lake v. Midwest Packing Co.,* 301 S.W.2d 834, 835 (Mo.1957). Although the Commission still has the implied statutory authority to bypass the ALJ and hold primary evidentiary hearings at which live testimony from all the parties' witnesses is received, *see* § 287.480, RSMo 1994, it rarely does so. Timothy J. Heinsz, *Missouri Workers' Compensation: Law and Practice* 7 (1984); *see also Crawford v. A.J. Sheahan Granite Co.,* 211 S.W.2d 52, 54 (Mo.App. 1948).

### EARLY DEVELOPMENT OF THE STANDARD OF REVIEW

■ As originally adopted, the Workers' Compensation Law provided that the final award of the Commission was appealed to the circuit court and the court of appeals had no direct original appellate jurisdiction. *See, e.g., Thresher v. Nurre Companies,* 355 S.W.2d 619, 620–21 (Mo.App.1962); § 287.490, RSMo 1994. The decision of the circuit court could then be appealed to the court of appeals having jurisdiction.[3] § 287.490, RSMo 1994. However, the Law did not set out a standard of review to be used by the courts. Therefore, it was left to the appellate courts to establish the proper

standard of review in such cases. In the early case of *State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Comm'n,* 320 Mo. 893, 898, 8 S.W.2d 897, 899 (banc 1928), the Court held that while the Commission was not a court vested with judicial power in the constitutional sense, its factual findings and award had the force and effect of the verdict of a jury in a civil action and could form the basis for a valid, enforceable judgment entered by a court of competent jurisdiction. *See also De May v. Liberty Foundry Co.,* 327 Mo. 495, 511, 37 S.W.2d 640, 648 (1931); *Hammack v. West Plains Lumber Co.,* 224 Mo.App. 570, 572, 30 S.W.2d 650, 651 (1930); *Carnahan v. Kurn,* 113 S.W.2d 824, 827 (Mo.App.1938). Accordingly, although a few very early cases characterized the Commission as essentially a statutory board of arbitrators authorized to hear and determine controversies between employer and employee, *see Oren v. Swift & Co.,* 330 Mo. 869, 875, 51 S.W.2d 59, 61 (1932); *Pfitzinger v. Shell Pipe Line Corp.,* 226 Mo.App. 861, 868, 46 S.W.2d 955, 958 (1932); the Commission's award and findings of fact were quickly held equivalent to and reviewed on appeal as the special verdict of a jury[4] in a civil case. *See, e.g., Leilich v. Chevrolet Motor Co.,* 328 Mo. 112, 121, 40 S.W.2d 601, 604 (1931); *Noto v. Hemp & Co.,* 231 Mo.App. 982, 987, 83 S.W.2d 136, 139 (1935); *Stepaneck v. Mark Twain Hotel,* 104 S.W.2d 761, 765 (Mo.App.1937); *Hanley v. Carlo Motor Serv. Co.,* 130 S.W.2d 187, 189–90 (Mo.App.1939); *Holmes v. Freeman,* 150 S.W.2d 557, 560 (Mo.App.1941); *Beatty v. Chandeysson Elec. Co.,* 238 Mo.App. 868, 877, 190 S.W.2d 648, 653 (1945). Consequently, the Commission's factual findings were considered to be conclusive and binding on appeal if supported by *any* substantial competent evidence in the record. *See Leilich,* 328 Mo. at 121, 40 S.W.2d at 604; *Crutcher v. Curtiss–Robertson Airplane Mfg. Co.,* 331 Mo. 169, 174, 52 S.W.2d 1019, 1020

**2.** Section 287.610, RSMo 1994, presently authorizes up to twenty ALJs statewide.

**3.** Under § 287.495, RSMo 1994, final awards on claims which arose on or after August 13, 1980 are now reviewed directly by the court of appeals.

**4.** A special verdict is a verdict by which the trier of facts finds the facts only, leaving the judgment to be entered to the court. *Fine Art Pictures Corp. v. Karzin,* 29 S.W.2d 170, 174 (Mo.App. 1930) (citing § 1418, RSMo 1919, which is now § 510.220, RSMo 1994).

(1932); *Miller v. St. Joseph Transfer Co.*, 224 Mo.App. 1114, 1116, 32 S.W.2d 449, 450 (1930); *Kostron v. American Packing Co.*, 227 Mo.App. 34, 39, 45 S.W.2d 871, 872 (1932); *Kaelin v. Schwartzkopf*, 143 S.W.2d 350, 351 (Mo.App.1940); *Beatty*, 238 Mo.App. at 877, 190 S.W.2d at 653. This is well illustrated by the following passage from *Carter v. Priebe & Sons*, 77 S.W.2d 171 (Mo.App.1934):

> Passing therefore to the question of [appellate review], it must be borne in mind that the Commission's finding stands on the same basis as the verdict of a jury in ordinary civil actions.... [T]he award is [therefore] conclusive on appeal to the circuit court, and also on appeal to this court, if there is *any* evidence before the Commission to support the award.

*Id.* at 174 (citation omitted, emphasis added).

Thus arose the closely-related principle of appellate review that the Commission's award could not be set aside on appeal as against the weight of the evidence. *State ex rel. May Dep't Stores Co. v. Haid*, 327 Mo. 567, 576, 38 S.W.2d 44, 48 (banc 1931); *Leilich*, 328 Mo. at 121, 40 S.W.2d at 604; *Crutcher*, 331 Mo. at 174, 52 S.W.2d at 1020; *Shumate v. American Asphalt Roofing Corp.*, 66 S.W.2d 949, 951 (Mo.App.1934); *Richter v. Multiplex Display Fixture Co.*, 127 S.W.2d 783, 784 (Mo.App.1939). In particular, *see Wheat v. E.A. Whitney & Son*, 34 S.W.2d 158, 162 (Mo.App.1930):

> It is easy to conceive a case where the commission might make its finding against the great weight of the evidence, as the claimant insists it did in this case. It is also of frequent occurrence that a jury determines questions of fact which are contrary to the weight of the evidence. In compensation cases, however, there appears to be no power in a court to set aside a finding of the commission on such ground. That is not within the province of a reviewing tribunal.

The courts also developed and applied the following rule: "[I]n determining whether or not the evidence is sufficient to support the award the [appellate] court must consider only the evidence which tends to support it and must disregard all the opposing evidence just as it would do in passing on a demurrer to the evidence in an ordinary civil action." *Hammack v. West Plains Lumber Co.*, 224 Mo.App. at 573, 30 S.W.2d at 651. Other early cases enunciating this principle of appellate review in workers' compensation cases include *Burgstrand v. Crowe Coal Co.*, 336 Mo. 119, 125, 77 S.W.2d 97, 100 (1934); *Rendleman v. East Texas Motor Freight Lines*, 355 Mo. 287, 293, 196 S.W.2d 171, 173–74 (1946); *Moorman v. Central Theatres Corp.*, 98 S.W.2d 987, 989 (Mo.App.1936); and *Hunt v. Jeffries*, 236 Mo.App. 476, 486, 156 S.W.2d 23, 29 (1941). The same rule was held to apply to the inferences which could be drawn from the evidence before the Commission. *Elihinger v. Wolf House Furnishing Co.*, 337 Mo. 9, 18, 85 S.W.2d 11, 15 (1935); *Beatty*, 238 Mo.App. at 877, 190 S.W.2d at 653.

## DEVELOPMENT OF THE MODERN STANDARD OF REVIEW

The next major development in this area came not from the courts, but the citizens of Missouri, when they adopted art. V, § 22 of the Missouri Constitution of 1945. This section, which became effective July 1, 1946, provided:

> All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.

This constitutional provision [5] "worked a change in the scope of review and the effect to be attributed to findings of fact by the Industrial Commission." *Lawson v. Lawson*, 415 S.W.2d 313, 316 (Mo.App.1967) (*citing Shrock v. Wolfe Auto Sales, Inc.*, 358 S.W.2d 812, 814 (Mo.1962)); *see also Brown v. Weber*

---

**5.** Effective January 2, 1979, art. V, § 22 was repealed and reenacted as art. V, § 18 of our current Constitution with an addition not relevant to this discussion.

*Implement & Auto Co.*, 357 Mo. 1, 206 S.W.2d 350, 352 (1947); *Brooks v. General Motors Assembly Div.*, 527 S.W.2d 50, 53 (Mo.App.1975). To begin with, it changed the long-standing rule that the Commission's award in a workers' compensation case was equivalent to a jury verdict for the purpose of appellate review. In *Seabaugh's Dependents v. Garver Lumber Mfg. Co.*, 355 Mo. 1153, 200 S.W.2d 55 (banc 1947), the Missouri Supreme Court held that due to the adoption of art. V, § 22, the Commission's award "is now to be regarded as having more nearly the force and effect of a judgment in a *non-jury case* under the new Civil Code...." 355 Mo. at 1166, 200 S.W.2d at 62 (emphasis added). Other cases observing that art. V, § 22 changed the old rule that the Commission's findings had the same force and binding effect on appeal the verdict of a jury include *Goetz v. J.D. Carson Co.*, 357 Mo. 125, 206 S.W.2d 530, 532 (1947); *Rogers v. Reorganization Inv. Co.*, 200 S.W.2d at 567; *Collins v. Reed–Harlin Grocery Co.*, 230 S.W.2d 880, 885 (Mo.App.1950); and *Brown v. Douglas Candy Co.*, 277 S.W.2d 657, 664 (Mo.App.1955). The notion that the Commission's findings are equivalent to the verdict of a jury can nevertheless be seen in a few cases decided years after our Supreme Court changed that rule in *Seabaugh. See McCaleb v. Greer*, 241 Mo.App. 736, 745, 267 S.W.2d 54, 59 (1954); *Pate v. St. Louis Indep. Packing Co.*, 428 S.W.2d 744, 752–53 (Mo.App.1968).

■ Moreover, after the adoption of art. V, § 22, appellate courts were no longer bound by the former rule that the Commission's findings and award had to be upheld if there was *any* substantial evidence to support them. *Buecker v. Roberts*, 200 S.W.2d 529, 532 (Mo.App.1947); *Henderson v. Lac-*

*lede Christy Clay Prods. Co.*, 206 S.W.2d 673, 675 (Mo.App.1947). Also done away with was the related rule that a reviewing court could not set aside an award as against the weight of the evidence. *Cheek v. Durasteel Co.*, 209 S.W.2d 548, 555–56 (Mo.App.1948). A reviewing court is now authorized to conduct an independent review of the whole record to determine for itself whether the Commission's award, although supported by some evidence, is nevertheless clearly against the overwhelming weight of the evidence contained in the whole record. *Id.* at 556; *Collins*, 230 S.W.2d at 885, 887.

As explained by the Court in the seminal case of *Wood v. Wagner Elec. Corp.*, 355 Mo. 670, 197 S.W.2d 647 (banc 1946):

> The question is raised as to the scope of review under Section 22, Article V, 1945 Constitution. We cannot agree with the conclusion of the court of appeals that 'Section 3732 [RSMo 1939, now § 287.495, RSMo 1994 [6]] has not been affected by the new Constitution.' [7]
>
> * * * * * *
>
> [A]s of July 1, 1946, there has been written into Section 3732, in lieu of the narrow review ground No. 4 'that there was not sufficient competent evidence in the record to warrant the making of the award,' [*see* § 287.495.1(4), RSMo 1994] the broader ground that the award (and any finding supporting it) was not 'supported by competent and substantial evidence upon the whole record.' This is true because the Constitution makes this broader review the minimum standard which may be established for review in any case decided on a hearing before an administrative officer or body.
>
> * * * * * *

**6.** The relevant portion of § 287.495, RSMo 1994, which is identical to that of § 3732, RSMo 1939, provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

**7.** In *Wood v. Wagner Elec. Corp.*, 192 S.W.2d 579, 586 (Mo.App.1946), the Eastern District had held: "[W]e do not believe said section of the new Constitution [art. V, § 22] makes any change with respect to appellate procedure under the Workmen's Compensation Law."

[T]his stated minimum standard ('supported by competent and substantial evidence upon the whole record') is mandatory and requires no legislation to put it into effect. This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony.

355 Mo. at 673–74, 197 S.W.2d at 649 (internal footnotes added). *See also Kansas City v. Rooney,* 363 Mo. 902, 903, 254 S.W.2d 626, 627 (banc 1953) ("As we held in the *Wood* case, all previous statutes are amended by substituting the provisions of Section 22, Article V, for any scope of review previously stated."), *overruled on other grounds by State ex rel. Leggett v. Jensen,* 318 S.W.2d 353, 358 (Mo. banc 1958).

 In cases decided subsequent to the adoption of what is now art. V, § 18 of the Missouri constitution, the appellate courts of this state, led by our Supreme Court, have adopted and applied a two-step review process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of *all* the evidence before it.[8] First, the reviewing court examines the record, together with all reasonable inferences to be drawn from the evidence therein, in the light most favorable to the findings and award of the Commission to determine whether they are supported by competent and substantial evidence. If so, the reviewing court must then determine whether the Commission's findings and

award, even if supported by some competent substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence contained in the whole record before the Commission. *See Thacker v. Massman Constr. Co.,* 247 S.W.2d 623, 627 (Mo.1952); *Hall v. Spot Martin, Inc.,* 304 S.W.2d 844, 847–48 (Mo.1957); *Brown v. Anthony Mfg. Co.,* 311 S.W.2d 23, 27 (Mo. banc 1958); *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625, 627–28 (Mo.1969); *Hargis v. United Transports, Inc.,* 274 S.W.2d 339, 342 (Mo.App.1955); *Blair v. Armour & Co.,* 306 S.W.2d 84, 88 (Mo.App.1957); *Riggs v. A.P. Green Fire Brick Co.,* 376 S.W.2d 635, 636–37 (Mo.App.1964); *Enyard v. Consolidated Underwriters,* 390 S.W.2d 417, 423 (Mo.App. 1965). In other words, the factual findings and resulting award of the Commission should be set aside on appeal if they are not supported by competent and substantial evidence *or,* even if supported by such evidence, if they are clearly contrary to the overwhelming weight of the evidence. Otherwise, the Commission's award is to be affirmed. As discussed by the Court in *Francis v. Sam Miller Motors, Inc.,* 282 S.W.2d 5 (Mo.1955):

In reviewing a compensation case we have the duty to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, Art. V, Const. of Mo.1945, V.A.M.S. This court has said that 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the reviewing tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.'

*Motors, Inc.,* 614 S.W.2d 294, 299–300 (Mo.App. 1981). *See also Sanderson v. Producers Comm'n Ass'n,* 360 Mo. 571, 577, 229 S.W.2d 563, 566 (1950) ("We must determine whether the Commission could reasonably have made its finding from a consideration of all the competent [substantial] evidence [before it].").

---

8. Indeed, it has been held that the reviewing court's "duty" and "ultimate obligation" in a workers' compensation case is to determine whether, upon consideration of the whole record before it, the Commission could reasonably have made the findings and award it did. *Cheek,* 209 S.W.2d at 553; *Vogel v. Hall Implement Co.,* 551 S.W.2d 922, 923 (Mo.App.1977); *Kite v. Polsky*

*Id.* at 11–12 (*quoting Wood,* 355 Mo. at 674, 197 S.W.2d at 649).

At this point, it should be observed that there are an increasing number of cases from all three divisions of the Court of Appeals, most of which are of fairly recent vintage, holding that in reviewing a workers' compensation case, the appellate court must disregard any evidence which might support any finding different from those made by the Commission. Such cases include, for example, *Hinton v. National Lock Corp.,* 879 S.W.2d 713, 716 (Mo.App.1994) ("Evidence that would support a finding different from that of the commission is disregarded"); *Woodburn v. May Distrib. Co.,* 815 S.W.2d 477, 482 (Mo.App.1991) ("For purposes of appellate review of the commission's award, evidence that might support findings different from those of the commission is disregarded"); *Faubion v. Swift Adhesives Co.,* 869 S.W.2d 839, 840 (Mo.App.1994) ("[T]his court must disregard evidence unfavorable to the Commission's decision"); *Brundige v. Boehringer Ingelheim,* 812 S.W.2d 200, 201 (Mo.App.1991) ("Evidence which would support findings different than those found by the Commission must be discarded"); and *Bergmeyer v. Queen's Supermarkets,* 878 S.W.2d 60, 61 (Mo.App.1994) ("In reviewing the record, we examine the evidence in the light most favorable to the finding, disregarding evidence which might support findings different than those found by the Commission.").

 It is, however, abundantly clear from a review of the relevant case law that this principle may be applied only during the first step of the analysis—that is, in determining whether the Commission's award and findings are supported by competent and substantial evidence which, if believed, is legally sufficient to permit the making of the award. Art. V, § 22 superseded the type of review that looked simply to see whether the evidence in the record tending to support the Commission's findings, standing alone, met the test of substantiality. Instead, we now have a review in which the court, without substituting its judgment for that of the Commission, examines the entire record to see whether the evidence against the Com-

mission's findings so clearly overwhelms that which supports them that the Commission could not have reasonably made its findings and reached its result. Thus, the cases clearly teach that, while the evidence is viewed in the light most favorable to the award, the opposing, unfavorable evidence must be considered and cannot be discarded or disregarded when the appellate court performs the second step of the analysis because art. V, § 18 demands that our review be "upon the whole record." *See, e.g., Toole v. Bechtel Corp.,* 291 S.W.2d 874, 883 (Mo.1956) (holding that "the overall effect of all of the evidence," including that contrary to the Commission's award, must be considered by the reviewing court when deciding whether the Commission's findings were reasonably made or were instead against the overwhelming weight of the evidence); *Duncan v. A.P. Green Refractories Co.,* 522 S.W.2d 639, 640 (Mo.App.1975) (in deciding whether the Commission could have reasonably made its findings upon consideration of all the evidence before it, the appellate court must necessarily consider the overall effect of all the evidence contained in the record). As recently observed in a leading treatise on Missouri administrative law and procedure:

> Occasional statements to the effect that the court 'reviews the evidence in a light most favorable to the findings and decisions of the Commission and must disregard all opposing and unfavorable evidence' are overly broad unless taken in context. They may be taken literally only at the sacrifice of the prevailing principle of whole record review which requires that the reviewing court make its determination in light of the evidentiary base which detracts from the agency's findings as well as that which supports them.

20 Alfred S. Neely, *Missouri Practice: Administrative Practice and Procedure* § 12.46, at 501 (1995) (*quoting Burns v. Labor & Indus. Relations Comm'n,* 845 S.W.2d 553, 555 (Mo. banc 1993)). *See also Central Bank of Clayton v. State Banking Bd. of Missouri,* 509 S.W.2d 175, 189 (Mo.App.1974) (holding that the constitutional requirement that the appellate court consider the evidence "upon the whole record" means that it must take into account whatever in the record

fairly detracts from the substantiality of the evidence).

Proper appellate review of workers' compensation cases also depends on the correct application of other principles which are more subtle and somewhat more difficult to apply in practice. Take, for instance, the Court's admonition in *Wood* that the reviewing court in a workers' compensation case "should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony." *Wood,* 355 Mo. at 674, 197 S.W.2d at 649. *Wood's* extensive progeny on this point includes *Seabaugh,* 355 Mo. at 1166, 200 S.W.2d at 62; *Karch v. Empire Dist. Elec. Co.,* 358 Mo. 1062, 1070, 218 S.W.2d 765, 769–70 (1949) (rule applies whether witness testified live before referee or Commission); *Francis,* 282 S.W.2d at 12; *Pittman v. Scullin Steel Co.,* 289 S.W.2d 57, 61 (Mo.1956); *Damore v. Encyclopedia Americana,* 290 S.W.2d 105, 108 (Mo.1956); *Hall,* 304 S.W.2d at 847–48; *Brown,* 311 S.W.2d at 27; *Bolen v. Wallace,* 338 S.W.2d 73, 75 (Mo.1960); *Stephens v. Crane Trucking, Inc.,* 446 S.W.2d 772, 774 (Mo.1969); *Rogers,* 200 S.W.2d at 567; *Nick v. International Shoe Co.,* 200 S.W.2d 590, 593 (Mo. App.1947); *Laforge v. Coglizer Tent & Awning Co.,* 205 S.W.2d 957, 962 (Mo.App.1947); *Henderson,* 206 S.W.2d at 675; *Coleman v. Brown Strauss Corp.,* 210 S.W.2d 537, 539 (Mo.App.1948); *Box v. Morrison,* 230 S.W.2d 873, 874–75 (Mo.App.1950); *Tuller v. Railway Express Agency, Inc.,* 241 Mo.App. 68, 72, 235 S.W.2d 404, 406 (1950); *Jordan v. Chase Hotel, Inc.,* 244 S.W.2d 404, 407 (Mo. App.1951); *Enyard v. Consolidated Under-writers,* 390 S.W.2d 417, 423 (Mo.App.1965); *Ousley v. Hawthorn Co.,* 397 S.W.2d 719, 721 (Mo.App.1965); and *Marshall v. Nisbeth–Seidel Chevrolet Co.,* 595 S.W.2d 796, 798 (Mo.App.1980). Despite this impressive unbroken chain of authority, in recent years some courts seem to have overlooked *Wood's* directive that, "in the discharge of our duty as a reviewing court [in a workers' compensation case] we give due regard to findings, involving credibility, made by those before [whom] the witnesses gave oral testimony." *Counts v. East Perry Lumber Co.,* 462 S.W.2d 141, 142–43 (Mo.App.1970).[9] In particular, we note that the Eastern District of this court, while this opinion was being readied for hand down, issued its opinion in *Blackwell v. Puritan–Bennett Corp.,* 901 S.W.2d 81 (Mo.App.1995), in which it declared the rule to be that "[t]he Commission is the sole judge of the credibility of witnesses and the weight and value to give the evidence." Slip op. at 85. The court roundly criticized what it perceived the rule to be, stating that the Commission's role as arbiter of witness credibility was an "historical accident," *Id.* at 86, but nevertheless applied it without mention of the *Wood* rule.

As stated in *Williams v. International Shoe Co.,* 213 S.W.2d 657 (Mo.App.1948), under the "enlarged scope of review which the new Constitution affords," the appellate court must give considerable weight to the credibility findings made by those before whom the witnesses gave oral testimony "in determining where the weight of the evidence lies." *Id.* at 662; *Collins,* 230 S.W.2d at 885.[10] The

9. For three relatively recent workers' compensation cases where this principle of appellate review was neither mentioned nor applied despite the existence of facts and circumstances requiring its application, *see Husky Corp. v. Labor & Indus. Relations Comm'n,* 628 S.W.2d 378 (Mo. App.1982); *French v. Ford Motor Co.,* 720 S.W.2d 24 (Mo.App.1986); and *Westerheide Tobacco & Cigar Co. v. Labor & Indus. Relations Comm'n,* 723 S.W.2d 936 (Mo.App.1987).

10. We should note that there is an exception to this rule. In *Frazier v. National Bearing Div.,* 250 S.W.2d 1008, 1011 (Mo.1952), the Court held that rule of due deference to the findings of the referee, who heard the witnesses testify live and was subsequently reversed by the Commission, did not apply since no witness' veracity or credibility was at issue but the case concerned the accuracy of a particular doctor's diagnosis based on reported symptoms and hospital and medical records which were accepted as true by both parties and the "Industrial Commission could determine these matters from the written record equally as well as the referee who had the witnesses before him." *See also Brotherton v. International Shoe Co.,* 360 S.W.2d 108, 111 (Mo. App.1962) (in reviewing and interpreting written statements, depositions, and other documentary evidence in a workers' compensation case, the appellate court does not "owe the same amount of deference we would if the question had been one raised by the interpretation of or drawing of inferences from the testimony of persons who appeared and testified.").

"rule of deference" set forth in *Wood* and discussed in *Williams* and *Collins* is based on sound, time-honored principles. The reasons for a reviewing court to give considerable weight to credibility determinations made by those who actually received the oral testimony of the witnesses in a workers' compensation case were well stated in *Douglas v. St. Joseph Lead Co.*, 231 S.W.2d 258 (Mo.App. 1950):

> The principle of due deference to the findings of those before whom witnesses gave oral testimony, sometimes referred to as triers of the facts, is applicable only in situations where the evidence to be reviewed is evenly balanced, or very close to being evenly balanced, and the reviewing tribunal is in grave doubt as to the proper decision to make. In such a situation the credibility of witnesses becomes an extremely important factor in determining where the actual truth lies. Experience, Wisdom, and Justice all combine to suggest in this situation that those before whom the witnesses gave oral testimony were in a far better position to determine the credibility of the witnesses and the weight to be given to their testimony than any reviewing tribunal could be, because the reviewing tribunal sees only the cold record and does not have an opportunity to judge the witnesses who gave the testimony. Therefore, in deference to this advantage of the trier of the facts, the reviewing tribunal, in a close case, resorts to this well known principle by putting into the scales of justice the additional factor of deference to the findings made by the trier of the facts and thereby reaches the same decision as that reached by the trier of the facts. Due deference to the findings of the triers of the facts does not mean, however, that the reviewing tribunal should fail to perform its own proper function of reaching its own conclusions on the whole evidence. To give the principle of due deference any such meaning or application as is contended for by employer herein would render all reviews futile and an unnecessary expense. In cases such as the one at bar where on the whole record there is a clear showing of ample substantial, competent evidence to support the finding and award of the Commission, the principle of due deference to the findings of the referee has no application whatsoever.

*Id.* at 263.

It has therefore been held that while the reviewing court need not "close its eyes and blindly follow" the findings of the hearing officer as to credibility, the reviewing court's duty in a workers' compensation case to pay deference to the findings of those before whom the witnesses gave oral testimony "means that where the question is close and the evidence might justify a finding either way, and where the credibility of the witnesses is questioned, the court should give regard and consideration to the fact that the referee because of his hearing the witnesses testify and observing their demeanor and apparent willingness or reluctance to relate the facts truly was in a more favorable position to judge as to the credibility of the witnesses, and then pay such deference to his opinion as it deems proper." *Smith v. National Lead Co.*, 228 S.W.2d 407, 412 (Mo. App.1950). This is wholly consistent with the rationale the courts of this state have given for paying deference to the credibility findings of other administrative bodies. *See, e.g., Laciny Bros. v. Director of Revenue*, 869 S.W.2d 761, 762 (Mo. banc 1994) ("This Court gives due deference to the [Administrative Hearing] Commission's ability to assess the credibility of witnesses"); *Harrington v. Smarr*, 844 S.W.2d 16, 18, 19 (Mo.App.1992) (declaring that the reviewing court defers to the Administrative Hearing Commission on issues of witness credibility because, as it hears live oral testimony, "the Commission is in the best position to judge the demeanor and conduct of the witnesses"); *Phelps v. Metropolitan St. Louis Sewer Dist.*, 598 S.W.2d 163, 165–66 (Mo.App.1980) ("In the area of credibility of witnesses, we give deference to the agency's findings because the agency is best able to judge the demeanor and conduct of the witnesses before it."); *Jenkins v. Bryles*, 802 S.W.2d 177, 178 n. 2 (Mo.App.1991) ("[T]his court defers to the [Personnel Advisory] [B]oard with respect to the issue of credibility of the witnesses who testified at its hearing.").

■ This brings us squarely to the question of the respective roles of the ALJ and the Commission and the effect to be given their findings on appeal, when in conflict. It is true that it is the Commission's findings and award, not those of the ALJ, which are reviewed by the appellate court. *Pulliam v. McDonnell Douglas Corp.*, 558 S.W.2d 693, 698 (Mo.App.1977); *Lewis v. City of Liberty*, 600 S.W.2d 677, 679 (Mo. App.1980); *Gudde v. Heiman Grain, Inc.*, 830 S.W.2d 574, 575 (Mo.App.1992). It is also true that when it reviews the award entered by the ALJ, the Commission is not bound to yield to his or her findings, including those relating to credibility, and is authorized to reach its own conclusions. *See, e.g., Brown v. Griesedieck W. Brewing Co.*, 250 S.W.2d 803, 809 (Mo.App.1952); *Barron v. Mississippi Lime Co.*, 285 S.W.2d 46, 49 (Mo.App.1955); *Faries v. ACF Indus., Inc.*, 531 S.W.2d 93, 96 (Mo.App.1975); *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 579 n. 2 (Mo. App.1983); *Jones v. Jefferson City School Dist.*, 801 S.W.2d 486, 489 (Mo.App.1990); *Hatter v. Cleaning Serv. Co.*, 814 S.W.2d 951, 955 (Mo.App.1991). As noted by the court in *Douglas:*

> If we were to hold that the findings of a Referee *must* be deferred to, it would be equivalent to holding that the Referee is the supreme authority and thus his findings are binding upon the Commission and the [reviewing court].... [However], [t]hey are merely the servants and agents of the Commission. To adopt [that] view would make referees the masters of and superior to the Commission. Neither the statutes nor the decisions of our courts warrant such a view.

231 S.W.2d at 261 (emphasis in original); *accord Diebold v. Great Atl. & Pac. Tea Co.*, 241 S.W.2d 31, 34 (Mo.App.1951).

■ However, to say that the Commission is not *obligated* or *bound* to defer to the ALJ's credibility determinations is not to say they may be slighted or ignored, either by the Commission or the appellate court.

Credibility is clearly a consideration for both the ALJ and the Commission, and the Commission should not make its credibility calls in a vacuum. *See Francis*, 282 S.W.2d at 12; *Shepard v. Robinson*, 451 S.W.2d 329, 335 (Mo.1970); *Stamps v. Century Elec. Co.*, 225 S.W.2d 493, 497 (Mo.App.1949); *Griffin v. Evans Elec. Constr. Co.*, 529 S.W.2d 172, 176 (Mo.App.1975); *Lindquist v. Container Corp. of Am.*, 537 S.W.2d 676, 678 (Mo.App.1976). Furthermore, in reviewing the award of the ALJ, the Commission should properly consider that the ALJ "had the witnesses before him and was thus in a position which gave him a great vantage ground over the members of the Commission who afterwards had [only] the opportunity of reading [a transcript of] the testimony." *Kelsall v. Riss & Co.*, 165 S.W.2d 329, 331 (Mo.App.1942). Moreover, the courts of this state have also expressly acknowledged that while the ALJ's findings may not be conclusive or binding on either the Commission or the reviewing court, they are an important part of the whole record, "carry considerable weight, especially where there is a question as to the credibility of witnesses," and should be given due consideration along with all the other facts and circumstances of the case. *Banks v. City of Hannibal*, 283 S.W.2d 909, 913 (Mo.App.1955); *Carriker v. Lindsey*, 313 S.W.2d 43, 44 (Mo.App.1958); *Miranda v. American Refrigerator Transit Co.*, 392 S.W.2d 413, 419 (Mo.App.1965).[11]

The question of the deference to be given the finding of the referee and the finding of the Commission, when in conflict, was addressed by the Court in *Michler v. Krey Packing Co.*, 363 Mo. 707, 253 S.W.2d 136 (banc 1952). In that case, the Court said:

> It is contended that the finding herein is necessarily based upon credibility of witnesses and that, since no witness appeared before the Commission, and all did appear before the referee, no deference is due the finding of the Commission; but that instead the finding of the referee on the fact

---

**11.** In *Husky, French,* and *Westerheide Tobacco, supra* note 9, the courts held, with evident reluctance, that both the Commission and the reviewing court were essentially free to ignore or totally disregard the credibility determinations made by

the ALJ before whom the witnesses gave oral testimony. Because we believe the correct standard of review as stated in *Wood* and its progeny was not employed in those cases, we decline to follow them.

issue should be accepted. However, it is the award of the Commission that is reviewed by the Courts and not the award of the referee.

\* \* \* \* \* \*

We think the situation is correctly analyzed in the opinion of the United States Supreme Court in *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, [496–97,] 71 S.Ct. 456, 469, 95 L.Ed. 456 [1951]. There the Court, considering federal statutes providing substantially the same scope of review as our constitutional provision, Sec. 22, Art. V, held that examiner's findings were a part of the record and a factor to be considered in determining whether the decision of the administrative tribunal was supported by substantial evidence on the record taken as a whole. The Court explained this as follows:

> "We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. *The findings of the examiner are to be considered along with the consistency and inherent probability of testimony.* The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial.'"

*Michler,* 363 Mo. at 716–17, 253 S.W.2d at 140–41 (emphasis added by our Supreme Court). The Court in *Michler* went on to observe that insofar the testimony supporting the referee's finding was internally contradictory and inconsistent and had many other "inherent weaknesses," and because the referee's finding directly conflicted with what it termed "impressive documentary evidence" tending to support the Commission's findings to the contrary, it could not say, "[a]fter giving effect to the referee's finding to the contrary, ... that the Commission could not have reasonably reached its result upon consideration of all the evidence before it or that this result is clearly contrary to the overwhelming weight of the evidence." 363 Mo. at 717, 253 S.W.2d at 141. For other cases applying the analysis set forth in *Michler, see Woodward v. J.J. Grier Co.,* 270 S.W.2d 155, 159 (Mo.App.1954); *Patane v. Stix, Baer & Fuller,* 326 S.W.2d 402, 411 (Mo.App.1959); *Riggs v. A.P. Green Fire Brick Co.,* 376 S.W.2d 635, 641 (Mo.App. 1964); *Gordon v. Puritan Chem. Co.,* 406 S.W.2d 822, 826, 827 (Mo.App.1966).

Therefore, in reviewing cases where the Commission has reversed the findings and award entered by the ALJ, the appellate court engages in the two-step analysis discussed *supra* and applies the rule in *Michler.* First, it examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the award is supported by competent and substantial evidence. At this stage, the court may disregard the credibility determinations of the ALJ because it is viewing the evidence in the light most favorable to the award. If there is such evidence, it moves on to the second step of the analysis to determine whether the award is against the overwhelming weight of the evidence. In this stage of the review, the court views the evidence in the light most favorable to the award but must consider all evidence in the record, including that which opposes or is unfavorable to the award. The contrary evidence must be considered because the review is on the whole record. In other words, the court must take account of the overall effect of all of the evidence including the credibility determinations of the Commission. Because the ALJ's findings and credibility determinations are part of the record as a whole, when the Commission's determinations as to the credibility of witnesses who gave live testimony before the ALJ are different from

those made by the ALJ, the ALJ's contrary findings must be given due consideration, bearing in mind that evidence supporting a conclusion may be less substantial when an impartial, experienced ALJ who has observed the witnesses and lived with the case has drawn conclusions different from the Commission's. In such cases, it is therefore a great aid to the reviewing court if the Commission articulates the reasons why it differed in its credibility determinations. Otherwise, the court is left to search the record and speculate as to the Commission's rationale.

Of course, in cases where the Commission affirms or adopts the findings and award made by the ALJ before whom the witnesses in the case testified in person, the resulting consistency, especially as concerns credibility determinations, is a powerful factor in favor of upholding the Commission's award on appeal. *See Francis,* 282 S.W.2d at 12; *Morgan v. Krey Packing Co.,* 454 S.W.2d 939, 942 (Mo.App.1970); *Marshall,* 595 S.W.2d at 798. In particular, *see Williams,* 213 S.W.2d at 663 (holding that because the result in the case "has been adverse to the employee from the time of the decision by the referee," who heard the witnesses live, "there is nothing in the situation to warrant a reviewing court in interfering with the award, which is supported by competent and substantial evidence on the whole record.").

### SUMMARY

To briefly summarize, the standard of review of an award of the Commission is as follows. The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two-step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to sup-

port the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. In doing so, it takes into consideration the credibility determinations of the Commission and, if those determinations as to witnesses who gave live testimony before the ALJ are different than those made by the ALJ, it also considers the ALJ's credibility findings as well as the reasons, if any are given, why the Commission differed with those findings. Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

### II.

We now discuss the facts and address the two points raised on appeal by Research. The evidence showed that on May 1, 1992, Davis was repairing an air conditioner at Research's Student Village, an apartment area adjacent to Research where student nurses and staff members live. At 4:45 p.m., Davis' supervisor called him and asked him to help a co-worker, Tom Dempsey, move a 200–230 pound apartment-sized refrigerator from one student apartment (Apartment 2126) to another (Apartment 2180). Davis met Dempsey at apartment 2126 with a work cart. Davis and Dempsey loaded the refrigerator onto a refrigerator dolly. They wheeled the refrigerator out of apartment 2126 and up to apartment 2180. The refrigerator had to be wheeled up two eight-inch steps in order to be wheeled into apartment 2180. Dempsey pulled up on the

dolly's handles while Davis pushed up from underneath, holding the bottom of the refrigerator. While pushing the refrigerator up the two steps, Davis testified he felt a deep, sharp pain in his low back and down his left hip and leg. Davis described the pain as "excruciating" and unlike any pain he had felt before.

After the men installed the refrigerator, they moved the contents of the old refrigerator into the new refrigerator. As they moved the old refrigerator out, Davis again lifted it from the bottom so they could get it down the two steps and onto the sidewalk. Dempsey pushed the refrigerator back to the shop using the dolly while Davis followed, pushing his work cart behind Dempsey.

The men returned to the shop a few minutes after 5:00, and Davis began to do some paperwork. Davis testified that once he returned to the shop, his pain had decreased but that he was still experiencing quite a lot of pain. He further testified that while in the shop, he spent up to 45 minutes in the restroom because he "had trouble" urinating. Davis left the shop between 5:30 and 5:45. He was rushing to leave so he could attend the wake of the wife of a former supervisor that evening. On his way home, Davis stopped at a convenience store for milk and cigarettes. He arrived at home at around 6:30. He did not go to the wake because he was running late. He did not inform his wife of the injury to his back that evening because he did not want to worry her.

The next morning, Saturday, Davis left his home at 9:00 to attend a funeral, which was a thirty-five minute drive from his home. The funeral began at 10:00 and lasted an hour. He then drove home, stopping at a garage to have the tire on his van fixed. He arrived at his home at approximately 1:00 that afternoon. At approximately 5:00 that evening,

Davis finally told his wife that he had "overdone it at work yesterday" and that he was "having problems urinating and coping with the pain." She called Dr. John Yost, the physician who was treating Davis for his previous back problems.[12] Dr. Yost was not in his office but because Davis was having difficulty urinating, Dr. Yost's office suggested that Mrs. Davis take him to the hospital.[13] Davis was admitted to Research Medical Center on May 2, 1992. Dr. Yost performed back surgery on Davis on May 7, 1992.

Based on the standard of review set out above, and the foregoing factual recitation, it is clear that there was sufficient competent and substantial evidence in the record to support the award. While Research phrases its first point in terms of the award not being supported by substantial competent evidence, it is, in reality, contending that the award is against the overwhelming weight of the evidence. Research cites several inconsistencies and discrepancies in the medical records and the testimony of several of the witnesses. Research contends these had a major impact on the ALJ's credibility determinations and finding in favor of Research. For instance, Davis testified that despite his "excruciating" pain, he did not mention to anyone at work, including Dempsey who was with him when the injury occurred, that he had injured his back. Dempsey testified that Davis had no trouble moving the refrigerator after he allegedly hurt his back or in quickly running around picking up papers and other items that had blown off his work cart. Another co-worker, Scott Spillman, testified that, in order to attend a wake that evening, Davis rushed around the shop and was in a "light jog" when he left. Research also points to the fact that despite his "excruciating" pain and difficulty urinating, Davis testified he did not inform his wife of his injury until more

**12.** Davis has had back problems since he was injured in a fall while he was working for a different employer in 1974. Prior to 1992, he had been hospitalized on numerous occasions due to pain and/or injuries to his back. Dr. Yost performed back surgery on Davis in October, 1990, following which he was released to return to work in January, 1991. Following that surgery, Davis injured his back at least two more times. Since January, 1991, he has regularly taken prescription medication in the form of

Percocet, a pain reliever, and Parafon Forte, a muscle relaxant and anti-inflammatory agent. Davis saw Dr. Yost five times regarding the pain in his back and left leg in the two months preceding the refrigerator incident on May 1, 1992.

**13.** Mrs. Davis also called the office of Davis' personal family physician, Dr. Sam Hoeper, but was unable to reach him.

than 24 hours after the incident. However, Davis' wife testified that Davis did tell her about the incident but that she paid no attention because his complaints were no different than ones he had made on several occasions in the past. Research also places emphasis on the fact that none of hospital or doctors' records after the incident refer to an accident or work-related injury until the discharge summary of May 11, 1992. Furthermore, Dr. Yost and Dr. Hoeper's notes showed Davis had been having back problems in the two months prior to May 1, 1992, and that they were getting progressively worse.

Two board-certified orthopedic surgeons testified regarding their opinions as to whether Davis' lifting the refrigerator resulted in his need for surgery. Dr. Yost testified on behalf of Davis and Dr. John Pazell testified on behalf of Research. It was undisputed that Davis had a herniated disc with an extruded disc fragment in April of 1992 (before the refrigerator incident). However, Dr. Yost testified that, in his opinion, the extruded disc fragment present in April of 1992 was not impinging upon a nerve root until Davis lifted the refrigerator on May 1, 1992. In his professional opinion, Davis' lifting the refrigerator caused the disc fragment to become disengaged and move, putting pressure on the nerve root and causing a "dramatic and significant" worsening of his condition necessitating surgery. Therefore, according to Dr. Yost, Davis' moving the refrigerator and the resulting nerve root impingement was the cause of his need for surgery on May 7, 1992.

On the other hand, Dr. Pazell testified that he did not believe Davis' condition changed significantly from April to May of 1992. He did not believe that the diagnostic tests performed on Davis showed that he had nerve root impingement in May but did not have the impingement in April of 1992. Therefore, although he deferred to Dr. Yost's opinion that Davis needed surgery on May 7, he did not agree with Dr. Yost that moving the refrigerator caused the need for surgery.

In reaching her decision to deny compensation, the ALJ made credibility determinations which influenced her decision. The two credibility calls made by the ALJ that affect-

ed her ruling the most were that a) Davis was not a credible witness in that his story was not believable based on the inconsistencies between his testimony and that of other witnesses, and b) that the medical opinion of Dr. Pazell was more persuasive than that of Dr. Yost. We note first that both Dr. Pazell and Dr. Yost testified by deposition. Because they did not appear before the ALJ and provide live testimony, "the Commission could determine [their credibility] from the written record equally well as" the ALJ. *Frazier*, 250 S.W.2d at 1011. Therefore, as explained in our extended discussion of standard of review, *supra*, we give no consideration to the ALJ's credibility determination as between the two doctors, but defer only to the Commission's credibility determination. The Commission found Dr. Yost's testimony more credible because he was Davis' treating physician and because Dr. Pazell's testimony was based on a one-time review of Davis' medical records. With respect to Davis' credibility, the Commission explained that it did not believe that the inconsistencies between his testimony and that of other witnesses, particularly Tom Dempsey, destroyed his credibility. It pointed out that the record reflected that Davis had "long lived with back pain and obviously did not desire to have additional surgery, be off work, or file an additional workers compensation claim as a result of his accident with the refrigerator on May 1." It concluded that it was "quite logical and reasonable" for him to have behaved in the way he did and expressly found his testimony "credible and worthy of belief." The Commission also pointed out that "as a practical matter, there is nothing to explain the dramatic change in the condition of Mr. Davis ... other than a traumatic event causing the disc fragment to move a small distance to where it did impinge on the nerve root."

After reviewing the whole record and duly considering the ALJ's findings, it is our conclusion that no basis exists for disturbing the Commission's contrary factual findings. We find the Commission's explanation of why it made a different call as to Davis' credibility reasonable, and do not believe Davis' account was inherently improbable or so inconsistent

or contradictory as to make the Commission's reliance on it injudicious or unreasonable. We likewise find that the credibility determinations of the Commission with respect to Davis and Dr. Yost, conjoined with the quantum of competent and substantial evidence in the record supporting the award, preclude a finding, even after giving the ALJ's contrary determinations the weight and consideration they deserve in the light of judicial experience and reason, that the award is against the overwhelming weight of the evidence or could not have been reasonably made upon consideration of all the evidence.

Research nevertheless contends the Commission should have given greater weight to the ALJ's findings, particularly her credibility determinations. Research points to this statement made by the Commission in reversing the ALJ:

> The evidence of the record shows that the result reached by the administrative law judge could reasonably be reached given her resolution of the issue of credibility of the witnesses. However, the record likewise would support the opposite ruling, granting compensation to the claimant, given a different resolution of the credibility of the witnesses.

Certainly there was sufficient evidence to support the ALJ's original determination. However, as noted *supra*, the Commission is not bound or obligated to yield to the ALJ's determination of the credibility of witnesses or its other factual findings and we review the Commission's award, not the findings of the ALJ. When, as in this case, the Commission disagrees with the ALJ's findings and credibility determinations, they become relevant in our review to ascertain whether the award is against the overwhelming weight of the evidence but prior to such time, they are to be given only such weight and deference as the Commission deems appropriate. The quoted passage and the Commission's stated reasons for differing with the ALJ are proof that it did not callously ignore, capriciously reject, or arbitrarily disregard her findings on the issue of the credibility of the witnesses who testified before her, but duly considered them in reaching its contrary result. In our review of the whole record, we likewise have carefully considered the ALJ's findings, as well as the Commission's findings and reasons for differing with the ALJ. We have also reviewed all evidence in the record and we cannot say that the Commission's award is not supported by competent and substantial evidence or that it is against the overwhelming weight of the evidence.

We therefore conclude that the Commission's findings and award were supported by competent and substantial evidence, that it was a reasonable result for the Commission to reach on consideration of all the evidence and was not contrary to the overwhelming weight of the evidence. *See Miranda,* 392 S.W.2d at 419. Point one is therefore denied.

Research's second point is that the Commission's award is predicated upon the adoption and erroneous application of the "treating physician rule," [14] contrary to Missouri law. This argument is without merit as there is no evidence the Commission applied a "treating physician rule" in this case. The Commission did not say they considered Dr. Yost's opinion binding or conclusive as to Davis' condition. The Commission did not even find Dr. Yost more credible solely because he was Davis' treating physician. The Commission based its finding in favor of Davis on the credibility of all the witnesses. However, Research points to the statement by the Commission:

> The Commission finds the testimony of Dr. Yost, the treating physician to be more credible than the contrary opinion and testimony of Dr. Pazell, based on a one time review of the records.

This is not an adoption of the "treating physician rule." Of course, the fact that Dr. Yost was the treating physician may be a factor in determining credibility. As we dis-

---

**14.** Under the "treating physician rule" applied by some federal courts, a treating physician's opinion is binding on the fact finder unless contradicted by substantial evidence and is entitled to extra weight because he is more familiar with the claimant's condition. *Stieberger v. Bowen,* 801 F.2d 29, 31 (2d Cir.1986).

cussed *supra,* Dr. Yost was very familiar with Davis' condition as he had treated him for years and had examined him several times in the two months prior to the injury. In contrast, Dr. Pazell never physically examined Davis. He based his opinion on the one-time review of Davis' records. In addition, the Commission relied on other evidence to support an award in favor of Davis, particularly Davis' own testimony. The Commission reviewed the entire record in making its decision.[15] Therefore, the Commission considered the evidence contrary to Dr. Yost's opinion but still found Dr. Yost to be more credible on the issue of causation. This is not an adoption and erroneous application of the "treating physician rule." Research's second point is denied.

The award of the Commission is affirmed.

All concur.

---

15. In its award, the Commission stated that "having reviewed the evidence and briefs, and considering the whole record, [we] hereby issue[ ] [an] award reversing the award of the administrative law judge denying compensation."