Wilma OBERLEY, Respondent,

v.

**OBERLEY ENGINEERING, INC., Appellant.**

No. 21110.

Missouri Court of Appeals, Southern District, Division Two.

March 31, 1997.

---

Greg B. Carter, John Mollenkamp, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for appellant.

Russell A. Ward, Joplin, for respondent.

PARRISH, Judge.

Oberley Engineering, Inc., (hereafter sometimes referred to as "the corporation") appeals an award by the Labor and Industrial Relations Commission (the Commission) of benefits to Wilma Oberley, surviving spouse of George Oberley. This court affirms.

George Oberley, a licensed civil engineer, died in an automobile accident while returning home from a business meeting he attended on behalf of the corporation. He was president and sole shareholder of Oberley Engineering, Inc., a consulting engineering firm.

The corporation was an S corporation for purposes of federal income taxes. As such, it was, for most purposes, not subject to corporation income taxes. *See* 26 U.S.C. § 1363. Generally, income taxes on net income of an S corporation are paid by its shareholders. 26 U.S.C. § 1366. A shareholder pays income taxes applicable to his or her pro rata share of the corporation's items of income, loss, deduction or credit. *Id.*

Michael Dearing prepared the corporation's income tax returns and George Oberley's and his wife's personal income tax returns. The information he used in preparing the returns was provided by the Oberleys. Mr. Dearing described the records he received as a "one-write system, which is nothing more than a check ledger."

Dearing began doing work for the Oberleys in 1983. He recalled that the corporation "began in '84, '85." He was asked the following questions about its operation and gave the following answers:

Q. Were you familiar with the status of Oberley Engineering, the corporate status?

A. At what point?

Q. At any time during the time when you rendered tax service to it or the Oberleys?

A. You mean the status as being a subchapter S corporation?

Q. Yes, sir.

A. Yes, sir. I was the one that suggested that the 2553 form be filed.

Q. And what year did you make that recommendation to them?

A. 1984.

Q. And so from and after 1984 the business was a subchapter S business?

A. Yes, it was.

Mr. Dearing was asked about Mr. Oberley's role in operating the business. He was asked, "Mr. Oberley wore several hats in connection with the business. I believe you said he did everything and ran it all out of his head, is that correct?" He answered, "He ran the sweeper at night." He was asked the following questions about how Mr. Oberley's compensation was reflected on the

corporation's income tax returns and gave the following answers:

Q. The returns as filed, '89 and '90, reflect compensation for his duties as officer?

A. Yes.

Q. They reflect compensation for him being the sole shareholder?

A. And the carpet sweeper.

Q. Do they reflect any wages being paid for his services rendered to the corporation as the only licensed civil engineer producing the civil engineering work of the corporation?

A. Sure, he was.

. . .

Q. I guess—

A. Mr. Ward, your answer to the question would be no. No, his wages were indirectly paid to him at the end of the year when the corporation's profits were assessed.

Q. So no wage was paid to him, just profits?

A. Yes.

Q. Other than his compensation as officer?

A. That's right.

The Oberleys' income tax returns for 1989 and 1990 (Form 1040) and the corporation's income tax returns (Form 1120S) for those years were admitted in evidence. The individual returns reflect no "wages" received by either Mr. Oberley or Mrs. Oberley. They report income derived from serving as "corporate officers" for Mr. Oberley in 1989 and 1990 and for Mrs. Oberley for 1989. Their income for services as corporate officers is reported on a Schedule C. The 1989 return includes two Schedule Cs, one for Mr. Oberley and one for Mrs. Oberley. The 1990 return includes a Schedule C for Mr. Oberley.

Mr. Oberley's 1989 Schedule C reflects income as the corporation's president. It shows $15,000 as "[g]ross receipts or sales." There are no expenses. There is "[n]et profit" of $15,000.

Mrs. Oberley's 1989 Schedule C shows income as the corporation's secretary. Six thousand dollars "[g]ross receipts or sales" is shown. There is a "[n]et profit" of $6,000.

The total "[b]usiness income" shown on page 1 of the Form 1040 is $21,000. Two Schedule SEs for "Social Security Self–Employment Tax" are included in the 1989 return, one for Mr. Oberley and one for Mrs. Oberley. They reflect net incomes from the Schedule Cs (Form 1040) of $15,000 and $6,000, respectively.

The 1989 Form 1040 includes a Schedule E that reports income from Oberley Engineering, Inc., as an S corporation, in the amount of $2,897.33. That amount is included in net income on page 1 of the return.

The corporation's 1989 tax return, Form 1120S, is consistent with the Oberleys' individual tax return. It reports "[c]ompensation of officers" of $21,000 and ordinary income from business activities of $2,897.33. A Schedule K–1 allocates that income to Mr. Oberley.

The Schedule C to the Oberleys' 1990 tax return shows income to Mr. Oberley as the corporation's president. It shows $14,000 "for 7 months only." A Schedule SE calculates "Social Security Self–Employment Tax" based on that amount. The "[b]usiness income" on page 1 of the 1990 return reflects the net income from Mr. Oberley's Schedule C.

The 1990 tax return includes $3,350.92 income from Oberley Engineering, Inc., as an S corporation, on Schedule E along with losses from two other S corporations. A net loss is shown. The amount of the net loss is included in the calculation of net income on page 1 of the 1990 Form 1040.

The 1990 corporation tax return is consistent with the Oberleys' 1990 Form 1040. It reports "[c]ompensation of officers" of $14,-000 and ordinary income from business activ-

ities of $3,350.92. A Schedule K–1 allocates that income to Mr. Oberley.

The commission found that Mr. Oberley's total wages in the year preceding his death, from July 29, 1989, through July 28, 1990, were $20,346.[1] It calculated his average weekly wage to be $391.27 and determined that his weekly benefit was $260.86.

The corporation does not contest that Mr. Oberley was an employee entitled to workers' compensation benefits. It asserts that the record does not support the amount of benefits awarded. The corporation contends the Commission's determination of the weekly benefit was erroneous; that the award is not supported by competent and substantial evidence. The Commission contends Mr. Oberley earned no wage as an employee; that wages paid for similar services were not shown; that the income tax returns reflect Mr. Oberley's compensation for services as an officer; that this was not "wages" for purposes of calculating workers' compensation benefits.

■ Appellate review is undertaken as follows:

First, the reviewing court examines the record, together with all reasonable inferences to be drawn from the evidence therein, in the light most favorable to the findings and award of the Commission to determine whether they are supported by competent and substantial evidence. If so, the reviewing court must then determine whether the Commission's findings and award, even if supported by some competent substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence contained in the whole record before the Commission.

*Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo.App.1995).

■ Compensation rates for purposes of workers' compensation benefits are calculat-

---

1. The Commission calculated the wages as follows:

| | | |
|---|---|---|
| Wages paid through July 28, 1990: | | $14,000.00 |
| Wages paid during all of 1989: | $15,000.00 | |
| Portion of 1989 wages paid in year preceding death—156 days or 22 weeks or 22/52 of the year | x 22/52 | 6,346.00 |
| Total wages paid for year preceding death | | $20,346.00 |

ed according to § 287.250.[2] Statutory formulas for calculating benefits are set forth in § 287.250.1—.3. They are based on the amount of "average weekly wage" an employee received from his or her employer. Section 287.250.4 prescribes how benefits are determined if an employee's "average weekly wage" cannot be determined by applying the statutory formulas. It states:

> If pursuant to this section the average weekly wage cannot fairly and justly be determined by the formulas provided in subsections 1 to 3 of this section, the division or the commission may determine the average weekly wage in such manner and by such method as, in the opinion of the division or the commission, based upon the exceptional facts presented, fairly determine such employee's average weekly wage.

The Commission applied § 287.250.4 to determine Mr. Oberley's average weekly wage, as did the administrative law judge. The Commission stated, "We agree that this appeal presents exceptional facts and think the judge was correct to apply this portion of the statute." The parties do not contest the Commission's conclusion that § 287.250.4 applies.

The corporation argues, nevertheless, that the Commission was not provided sufficient evidence from which it could determine an average weekly wage. It contends, therefore, that the benefits payable must be calculated at the minimum rate. It relies on *Betz v. Telegraph Investment, Inc.,* 844 S.W.2d 556, 557–58 (Mo.App.1992), and *Johnson v. City of Duenweg Fire Dept.,* 735 S.W.2d 364, 368–69 (Mo. banc 1987). The corporation also cites *Betz* for the proposition that business earnings of an S corporation cannot be considered as "wages" in calculating workers' compensation benefits. *See* n. 4, *infra.*

The claimant in *Betz* was the sole shareholder of Betz Telegraph Investment, Inc. His primary career employment was as an accountant. Telegraph Investment, Inc., was an S corporation for federal income tax purposes. It operated a restaurant. Mr. Betz was injured on the restaurant premises and sought to recover workers' compensation benefits for his injuries. Mr. Betz served as manager of the restaurant. However, he did not receive regular compensation. His recompense was corporation profits. He opened the restaurant daily and performed various tasks associated with its operation. He received meals at the restaurant for which he did not pay.

In *Betz* the claimant produced evidence, without objection, that restaurant managers in the area where the restaurant was located were paid in the $18,000 to $20,000 per year range. He sought benefits based on that level of compensation. The court held that Mr. Betz was a minimally compensated employee; that he was entitled to benefits calculated according to § 287.250(6), RSMo 1986,[3] based on the yearly wage "reckoned according to the average annual earnings of adults ... in the same (or if that is impracticable then of neighboring) employments." The court remanded the case to the Commission to determine benefits in accordance with the evidence adduced and § 287.250(6), RSMo 1986.

In *Johnson* the claimant was a volunteer fireman for the City of Duenweg. Mr. Johnson sought compensation after he sustained a heart attack while performing his duties as a volunteer fireman. He contended he was entitled to compensation based on the rate of pay of an employee of the City of Duenweg whose duties included responding to fire alarms. However, the employee had additional duties that Mr. Johnson, as a volunteer fireman, did not share. Mr. Johnson also produced evidence of what neighboring mu-

---

**2.** References to statutes are to RSMo 1994 unless otherwise stated.

**3.** C.C.S.S.S.S.C.S.H.S.H.C.S.H.B. 975, Mo.Laws 1992, rewrote § 287.250, RSMo 1986. The provision now applicable is § 287.250.1(6). It states:

If the hourly wage has not been fixed or cannot be ascertained, or the employee earned no wage, the wage for the purpose of calculating compensation shall be taken to be the usual wage for similar services where such services are rendered by paid employees of the employer or any other employer.

nicipal fire department chiefs received, contending his duties were commensurate with theirs. He sought benefits based on a comparable rate of compensation. The court held that Mr. Johnson's evidence was not sufficient to require a rate higher than statutory minimum. 735 S.W.2d at 369.

In this case the commission had before it testimony from an employee of the engineering firm of Allgeier Martin who testified that the base of that firm's newly hired engineers was $30,000 per year and that the salary scale for engineers who remain with that firm could range to over $103,000 per year. The corporation argues that because the witness who testified concerning salaries of engineers employed by Allgeier Martin did not relate the salaries paid by his firm with the type of work performed by Mr. Oberley, the record is void of evidence that would permit the Commission to calculate Mr. Oberley's average weekly wage. It argues that this case is akin to *Johnson;* that the evidence supports benefits based on the minimum rate of compensation.

This argument fails because George Oberley's average weekly wage was not determined by applying § 287.250.1(6). The Commission found that the administrative law judge's conclusion that there were "exceptional facts presented in this case" warranting use of § 287.250.4 was correct. It based its determination of benefits on that provision of the statute. The issue of whether the testimony adduced would be a sufficient basis for calculating benefits according to § 287.250.1(6) is not an issue in this case. The holdings in *Betz* and *Johnson* are of no assistance to the corporation.

Oberley Engineering, Inc.'s revenue was generated from professional services of its sole shareholder, George Oberley, or from personal services performed under his super-vision. The funds generated by the corporation were received and used by him to pay personal expenses on a recurring basis. Although not disbursed through a bookkeeping account designated "wages," checks drawn on the corporation's bank account were regularly used to pay his personal expenses, such as house payments, grocery bills and college expenses of his son.

An attorney who maintains a taxation practice, David Riesenmy, testified that he reviewed records related to the corporation income tax return and the personal income tax returns of Mr. and Mrs. Oberley. He testified that the personal expenses paid from the corporation checking account amounted to personal income to Mr. Oberley; those amounts were earnings for purposes of his personal income tax obligation.

Mr. Riesenmy's review of checks paid by the corporation during the year immediately preceding Mr. Oberley's death disclosed payment of non-business expenses that were Mr. Oberley's personal expenses. He found $46,-110.73 of income unreported by the corporation for the 12 months immediately preceding Mr. Oberley's death—"$46,110.73 of overstated expense or underreported income to the corporation." This was the amount of Mr. Oberley's personal expenses that the corporation paid.

Section 287.250.2 defines "gross wages" as including "in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging *or similar advance* received from the employer...." [Emphasis added.] The personal expenses of George Oberley paid by Oberley Engineering, Inc., during the 12 months immediately preceding his death were "similar advances" as identified in § 287.250.2 so as to be includable in his gross wages for purposes of calculating workers' compensation benefits.[4]

---

**4.** The corporation urges this court to hold that *Betz* stands for the proposition that net income derived from an S corporation cannot be "wages" to a shareholder for purposes of determining workers' compensation benefits. However, *Betz* does not specifically address this issue. Furthermore, the facts in *Betz* are dissimilar to the facts in this case in that Mr. Oberley's efforts were, in general, the efforts of the corporation. Mr. Betz's efforts, while assisting his corporation's business activities, did not directly produce the product it marketed. This court notes, nevertheless, as pointed out by the corporation, that some jurisdictions have held that a shareholder whose wages are shown on income tax returns as $0 or who is not shown to have ever received income from the corporation cannot recover workers' compensation benefits. *See General Repair Service, Inc. v. McKenzie,* 577 So.2d 619 (Fla.App. 1 Dist.1991); *Bituminous Cas. Corp. v. Deyle,* 225 Neb. 82, 402 N.W.2d 859 (1987); and

The corporation further argues, however, that the evidence was not sufficient to show it received income in an amount sufficient to pay Mr. Oberley $20,346 for the 12 months immediately preceding his death. The corporation argues that the only evidence of the amount of revenue received by it was the corporation tax returns for 1989 and 1990 and that the tax returns were not credible; that evidence of expenditures by the corporation, the checks alone, were not sufficient evidence to permit payment of benefits at any rate greater than the statutory minimum.

The corporation's 1989 tax return reported gross receipts of $164,608.69, "[c]ost of goods sold and/or operations" of $55,865.81, for gross profit of $108,742.88. The 1990 tax return for the corporation showed gross receipts of $68,820.64, "[c]ost of goods sold and/or operations" of $9,546.00, for gross profit of $59,274.64.

The Commission obviously weighed all the evidence, including the tax returns, the testimony of the accountant who prepared the returns, the testimony of the lawyer/tax practitioner who reviewed the returns, and checks of the corporation in concluding that Mr. Oberley received "gross wages", as that term is defined in § 287.250.2, of $20,346.00 for the 12 months immediately prior to his death. The Commission, after holding that § 287.250.4 was the proper basis for determining benefits under the facts of this case, concluded:

> Claimant's United States Income Tax Return for the seven months claimant worked in 1990 is contained in the record. That document shows employee was paid $14,000 in wages during the seven months he worked in 1990. We think that that amount plus a pro rata portion of the $15,000 reported as income in 1989 are the

most accurate method of determining employee's wages. Given the exceptional facts of this appeal, we will use those numbers. [Reference to transcript omitted.]

Even if the amounts used to calculate the "wages" pursuant to § 287.250.4 were derived from the amounts reflected as officer's compensation on the income tax returns, the accuracy of which may have been suspect, those amounts, according to Mr. Riesenmy's testimony, were less than the amount of personal expenses the corporation paid on behalf of Mr. Oberley. This court is unable to conclude, considering the particular facts in this case and that the Commission was applying § 287.250.4, that the use of the lesser amount of "wages" in calculating benefits was error. Section 287.250.4 gives the Commission considerable discretion in determining an employee's average weekly wage when there are exceptional facts. There were exceptional facts in this case. This court finds no abuse of discretion in the method the Commission employed in applying § 287.250.4.

The findings and award of the Commission with respect to the amount of "gross wages" for purposes of calculating George Oberley's "average weekly wage" pursuant to § 287.250.4 was supported by competent and substantial evidence and was not clearly contrary to the overwhelming evidence contained in the whole record. The award is affirmed.

CROW, P.J., and SHRUM, J., concur

---

*Insurance Co. of North America v. Indus. Com'n,* 116 Ariz. 21, 567 P.2d 337 (App.1977). However, the statutes in the jurisdictions that produced

those cases are unlike § 287.250.4. This court finds those cases unpersuasive.