**Steven MORIARTY, Appellant,**

v.

**CITY OF KIRKSVILLE, Respondent.**

**No. WD 55342.**

Missouri Court of Appeals,
Western District.

Aug. 25, 1998.

---

1. All statutory references are to RSMo 1994.

D. Terrell Dempsey, III, Hannibal, for Appellant.

Brian J. Fowler, Kansas City, for Respondent.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Steven Moriarity appeals from a final award of the Labor and Industrial Relations Commission (the Commission) denying him workers' compensation benefits. He asserts two points on appeal. He claims that the Commission erred in determining that he was not entitled to benefits because, in doing so: (1) it erroneously declared and applied the law in that it applied the incorrect standard for determining whether an "accident," as defined in § 287.020.2 [1], had occurred, entitling the appellant to compensation under Chapter 287, "The Workers' Compensation Law"; and, (2) it relied on a finding, which was contrary to the evidence, that "no medical expert found [his] injury was related to [his] employment" in that a medical report prepared by Dr. Ray Cunningham, which was offered into evidence, reflected that his injury was, in fact, work-related.

We affirm.

### Facts

The evidence in the light most favorable to the judgment of the Commission is as follows. *Smith v. Climate Eng'g,* 939 S.W.2d 429, 431 (Mo.App.1996). On February 23, 1994, the appellant worked an eleven-hour day for the City of Kirksville at the city airport, which included removing snow from the premises. As part of his work that day, he carried a 30–pound battery charger to a motor grader, drove a 25– to 30–year–old motor grader with poor power steering, shoveled snow for two hours, and spread salt from 50– to 60–pound bags onto the sidewalks. In closing the airport at the end of the day, the appellant was required to shut two gates which were both approximately eight to ten feet wide and approximately eight feet tall. Although the gates normally swung shut, on the day in question the appellant was required to pull them through a snow bank using a back and forward motion which took approximately five minutes per gate. By the end of the day, he began to feel sore from working all day. When he awoke the next morning, he was experiencing pain which he described as, "from my neck down to my hand through my shoulder and arm was in a muscle spasm and my right hand was like pins and needles." Although he was scheduled to work that day, he called his supervisor, Walter Sayre, and told him he would not be coming in because he had hurt his shoulder.

Over the next several weeks, the appellant saw numerous physicians for neck, back and shoulder pain. During this time, he exhausted his sick leave and vacation time. On March 16, 1994, the appellant requested a leave of absence from work. On March 21, 1994, he was terminated by the City of Kirksville. As a result, he then filed a claim for workers' compensation benefits on April 19, 1994, which the respondent contested in its answer filed on May 5, 1994. Over the next year, the appellant continued to see various physicians in an effort to obtain additional diagnoses and/or treatment for his pain.

On April 9, 1997, a hearing on the appellant's claim for workers' compensation benefits was held before Administrative Law Judge R. Michael Mason in Kirksville. In support of his claim for benefits, the appellant testified to the following: In 1984, he suffered a back injury while working for the railroad, for which he was off work for approximately six months with neck pain. As a result of this injury, his treating physician at the time suggested exploratory neck surgery. In addition, between 1984 and 1994, he saw a chiropractor for stiffness and soreness in his back. In 1993, while working for the respon-

---

**1.** All statutory references are to RSMo 1994, unless otherwise indicated.

dent, he suffered an injury which he described as "pull[ing] a rib out" while pushing an airplane. On February 14, 1994, nine days prior to the alleged injury of February 23, he saw Dr. Donald Maples for cervical and thoracic discomfort from which he claimed to have been suffering for about ten days. After the alleged injury of February 23, he saw several doctors. He decided to file his claim for workers' compensation benefits after seeing Dr. Jaroslava Odvarko on March 17, 1994, who informed him that his injury "should be under Workers' Compensation."

On cross-examination by counsel for the respondent, the appellant admitted that prior to the alleged injury of February 23, he had suffered from neck pain for at least the last two to three years. He also admitted that his back pain was not work-related and that his claim for benefits was derived solely from the alleged neck injury. He admitted that he could not point to an actual event which caused his neck injury.

In addition to his testimony, the appellant offered numerous exhibits, consisting primarily of medical records, in support of his claim for benefits. They reflect the following: The appellant received manipulative therapy for neck complaints on February 17, 1994, just six days prior to the alleged injury of February 23, 1994. On April 6, 1994, Dr. Clarkson examined the appellant for the respondent and stated in a letter to the respondent that "[i]t is my opinion that there is a possibility that the injury is work related." Although several physicians opined that the appellant did not need neck surgery, others were of the opinion that he did. As a result, the appellant decided to have Dr. Ray Cunningham perform neck surgery on him on May 23, 1995.

In support of its position, the respondent offered the testimony of Mr. Sayre, the appellant's immediate supervisor at the time of his alleged injury. Mr. Sayre testified that the respondent has a policy of requiring all employees to report to their immediate supervisor immediately if they are injured while on the job, but that the appellant never informed him in February, 1994, that he had injured himself at work. In addition to the testimony of Mr. Sayre, the respondent offered various medical records into evidence. These records reflect the following: The appellant went to Dr. Maples' office on February 14, 1994, nine days prior to his alleged injury, complaining of cervical and thoracic discomfort. Due to this discomfort, Dr. Maples recommended that the appellant take off eight weeks of work. In addition, the appellant described his back and neck pain as a "re-occurring problem."

On May 16, 1997, the ALJ handed down his decision denying the appellant benefits, holding that his injury was not compensable because his employment was not a substantial factor in the cause of his medical conditions, stenosis and spondylosis, and, therefore, he did not suffer a compensable "accident" as defined in § 287.020.2. In reaching this conclusion, the ALJ found that "the doctors' statements that the injury was medically caused by the work on February 23, 1994, are in error." Specifically, he found that Dr. Cunningham "never found the injuries actually treated ... to be substantially caused by [the appellant's] work." In addition, the ALJ found that the appellant's contention that Dr. Cunningham found that his injury was caused by his work on February 23, 1994, to be further discredited by the fact that Dr. Cunningham was given an incorrect medical history than what the appellant testified to at trial.

On June 3, 1997, the appellant filed an application for review of the award of the administrative law judge with the Commission. On December 15, 1997, the Commission entered its "Final Award Denying Compensation," wherein it affirmed the award and decision and adopted the findings and rulings of the administrative law judge and found that his award was "supported by competent and substantial evidence and [ ] made in accordance with the Missouri Workers' Compensation Act."

This appeal follows.

## Standard of Review

Our review of the Commission's decision is limited. *Kirksville Publ'g Co. v.*

*Division of Employment Sec.,* 950 S.W.2d 891, 894 (Mo.App.1997). The findings of the Commission, as to the facts, if supported by competent and substantial evidence, absent fraud, are conclusive. Section 288.210, RSMo Supp.1996. In this regard, we will defer to the Commission on issues concerning credibility and the weight to be afforded to conflicting evidence and testimony. *Smith,* 939 S.W.2d at 431. As to the weight to be given to an expert opinion, it is within the sole discretion of the Commission to make this determination, which cannot be reviewed by this court. *Id.* However, "[f]indings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on [us] and fall within [our] province of independent review and correction where erroneous." *Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 571 (Mo.App.1995).

■ We will disturb the decision of the Commission only if we find that: (1) it acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or, (4) the record lacks sufficient competent evidence to warrant the making of the award. *Kirksville,* 950 S.W.2d at 894–95 (quoting § 288.210, RSMo Supp.1996). In determining whether the record possesses sufficient competent evidence to support the Commission's findings and award, we apply a two-step process. *Davis,* 903 S.W.2d at 571. In the first step, we examine the whole record, "viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed." *Id.* If we find that there is sufficient competent evidence to support the award, we then move to the second step, where we

> view[ ] the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether

the award is against the overwhelming weight of the evidence.

*Id.*

## I.

■ In his first point, the appellant claims that the Commission erred in determining that he was not entitled to workers' compensation benefits under Chapter 287 because, in doing so, it erroneously declared and applied the law in that it applied the incorrect legal standard for determining whether an "accident," as defined in § 287.020.2, had occurred, entitling him to such benefits. Specifically, the appellant contends that the Commission applied a standard which required the appellant's complained-of injury to be caused by a "specific unforeseen event," rather than the correct standard which would have only required that his injury be "clearly work-related." For its part, the Commission agrees with the appellant as to the correct standard that should have been applied, but disagrees that it failed to apply this standard in concluding that he was not entitled to workers' compensation benefits. Thus, the issue for us to decide is whether the Commission, in concluding that the appellant was not entitled to workers' compensation benefits under Chapter 287 because his injury was not caused by a work-related "accident," applied the correct standard in determining what constitutes an "accident," as defined in § 287.020.2 and used in Chapter 287. And, because the determination of this issue involves a question of law, rather than of fact, we will conduct an independent review without paying any deference to the Commission's rulings of law as to this issue. *Davis,* 903 S.W.2d at 571.

Employer liability for workers' compensation benefits is governed by § 287.120, which provides, in pertinent part, that

> [e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by *accident arising out of and in the course of employment,* and shall be released from all other liability therefor whatsoever,

whether to the employee or any other person.

Section 287.120.1 (emphasis added). The term "accident" as used in § 287.120, is defined in § 287.020.2, as follows:

The word **"accident"** as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor.

This definition of "accident" was further explained in *Smith v. Climate Engineering*, 939 S.W.2d 429 (Mo.App.1996). In *Smith*, the Eastern District held that "[t]he cause of an injury need not be a single event, but rather the employee is to be compensated for gradual and progressive injuries which result from repeated or constant exposure to on the job hazards." *Id.* at 434. Although the parties agree that this definition or standard is the correct one for determining whether an injury resulted from a work-related "accident," as defined in § 287.020.2, they disagree as to whether this was the standard enunciated and applied by the Commission here.

█ The appellant's claim, that the Commission applied the incorrect legal standard in determining whether his injury resulted from an "accident," as defined in Chapter 287, is based upon the following excerpt from the "Findings of Fact and Rulings of Law" of the administrative law judge, which were adopted by the Commission as its own:

It was admitted by the claimant that he could not point to an actual event that caused his injury. He alleges that the strenuous work that day caused the injury, *not a specific event.* So, has the employee had an accident under the Missouri Workers' Compensation law?

(Emphasis added.) The appellant argues that this excerpt demonstrates that the Commission based its denial of benefits upon its erroneous belief that in order to be compensated under Missouri's Workers' Compensation Law for an injury from a work-related accident, an employee must be able to point to a specific event which caused the injury. We disagree.

The excerpt cited by the appellant cannot be viewed alone or in isolation as the appellant would ask us to do. Rather, in order to determine what standard the Commission applied in determining whether the appellant was injured as a result of an "accident" under Chapter 287, we must view its adopted findings and rulings as a whole. In this respect, the Commission, in its adopted findings and rulings, stated, in pertinent part, as follows:

It was admitted by the claimant that he could not point to an actual event that caused his injury. He alleges that the strenuous work that day caused the injury, not a specific event. So, has the employee had an accident under the Missouri Workers' Compensation law?

An accident requires the employee to suffer a compensable injury. *"An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor."* RSMO 287.020.2.

The statute further states in RSMO 287.020.3 that *"ordinary, gradual deterioration or progressive degeneration of the body caused by aging shall not be compensable, except where the deterioration or degeneration follows as an incident of employment."*

.... All three doctors agree that the diagnosis is spondylosis and stenosis at C5–6 which is affecting the C6 nerve root....

Stenosis is the narrowing of the spinal canal within the vertebrae due to the vertebrae growing shut on the spinal cord. Spondylosis is the abnormal fusion or growing together of two or more verte-

brae. Both of these problems develop over a length of time. *The employee's injury was an ordinary, gradual deterioration of the body which is not compensable since there was no evidence indicating it was an incident of employment.*

*Also, work was not a substantial factor in the cause of the injury.* Stenosis and spondylosis are usually held to be the *natural result* of one's physical and genetic makeup. It was [sic] been proposed by the medical profession that heavy, manual labor over a length of time *may speed up or aggravate the process. In this case, no evidence was presented on that point.* Considering the evidence presented I specifically hold that the employee's work activities did not contribute to the development of the stenosis or spondylosis.

(Emphasis added.) Based on these findings and rulings of the Commission as they pertain to the issue in question, we find that, in denying the appellant's claim for workers' compensation benefits, the Commission enunciated the correct standard for determining whether an "accident," as the term is defined in § 287.020.2, had occurred, entitling him to benefits.

■ As to whether the Commission applied the correct standard to the facts of this case for determining if a work-related accident had caused the appellant's complained-of injury, the evidence adduced at the hearing showed that he had a history of back and neck pain, beginning some ten years prior to his alleged injury on February 23, 1994, and, as recently as ten days prior to that date, had seen a doctor for back pain. In addition, he received manipulative therapy for neck pain on February 17, 1994, six days prior to his alleged compensable injury. Furthermore, the appellant testified that, other than being generally sore, he felt no pain during or after working the eleven-hour day, which work he claims caused his injury, until the following morning. In addition, he failed to report to his supervisor on February 24, 1994, that he had suffered any injury the previous day. Applying the agreed upon correct legal standard to this evidence, we conclude that the Commission properly denied the appellant's claim for workers' compensa-

tion benefits in that the evidence adequately demonstrates that his injury did not arise from an "accident" that was clearly work-related. As such, the appellant's claim, that the Commission, in denying him workers' compensation benefits, did not enunciate and apply the correct standard as to what constituted a work-related "accident," as defined in § 287.020.2, is without merit.

Point denied.

## II.

■ In his second point, the appellant claims that the Commission erred in determining that he was not entitled to workers' compensation benefits under Chapter 287 because in doing so it relied on a finding, which was contrary to the evidence, that "no medical expert found [his] injury was related to [his] employment" in that a medical report prepared by Dr. Ray Cunningham, which was offered into evidence, reflected that his injury was, in fact, work-related. The respondent contends that Dr. Cunningham's report did not constitute an expert opinion that his injury was work-related. After carefully reviewing this report, we agree with the respondent that Dr. Cunningham never stated that in his opinion the appellant's injury was work-related. Rather, in his report, he simply recites the self-serving history provided to him by the appellant. Thus, contrary to the appellant's contention, Dr. Cunningham's report did not constitute the opinion of a medical expert that his injury was work-related, entitling him to workers' compensation benefits.

■ Moreover, even assuming, *arguendo*, that the history which is recited in Dr. Cunningham's report constituted an opinion of a medical expert that the appellant's injury was work-related, it is in the sole discretion of the Commission to determine the weight to be given to an expert opinion, which determination cannot be reviewed by this court. *Smith*, 939 S.W.2d at 431. As a result, even if we were to find that Dr. Cunningham's report constituted an expert medical opinion to establish that the appellant's injury was work-related, because we must defer to the Commission's findings as to the weight to be

given such evidence, we find no merit in the appellant's claim in this point.

Point denied.

### Conclusion

We affirm the decision and final award of the Commission denying the appellant workers' compensation benefits under Missouri's Workers' Compensation Law, Chapter 287.

All concur.