**Pamela NIELSEN, Respondent,**

v.

**MAX ONE CORPORATION and Star Insurance Co., Appellants.**

No. 24964.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 13, 2003.

Motion for Rehearing or Transfer Denied Feb. 4, 2003.

Application for Transfer Denied April 1, 2003.

Jeffrey D. Slattery, Kansas City, for appellants.

Patrick J. Platter, Neale & Newman, L.L.P., Springfield, for respondent.

KERRY L. MONTGOMERY, Presiding Judge.

Max One Corporation and Star Insurance Co., (Appellants) appeal an award by the Labor and Industrial Relations Commission (Commission) of benefits to Pamela Nielsen (Claimant), surviving spouse of Vernon Nielsen (Nielsen). We affirm the decision of the Commission.

The Commission adopted the following facts as found by the administrative law judge (ALJ). Vernon Nielsen was an experienced over-the-road long-haul truck driver. Max One Corporation, a Chapter C corporation organized under the laws of Missouri, was an interstate trucking company involved in the ownership of semi-tractor units and the leasing of the units with drivers to trucking companies for operation in the over-the-road trucking industry. Nielsen incorporated Max One in 1996 and served as an employee, officer, and sole stockholder. Nielsen, via Max Line, Inc.,[1] also received compensation for various management activities provided to Max One, including the purchase of equipment and semi-tractor units; hiring, su-

---

**1.** Nielsen was the owner and sole shareholder of Max Line, a Chapter S corporation organized under the laws of Missouri. Testimony indicates that Nielsen established Max Line to receive payments for management services provided to Max One, resulting in more favorable tax treatment.

pervising and terminating drivers; evaluating, negotiating and executing leasing contracts; and ensuring compliance with state and federal law. Nielsen also drove a semi-tractor truck.

In late 1998, however, tax concerns led Nielsen to dissolve Max Line, Inc., and turn over many of the business and accounting responsibilities to a business consultant, Accounting, Tax and Management Services, Inc. (ATMS). Nielsen also faced problems with his Social Security benefits as a result of earning too much income in 1997 and 1998 and reduced his income in order to avoid losing that source of income. He continued to serve as an officer at Max One voluntarily and without compensation but ceased driving for the company and obtained employment elsewhere for the first two quarters of 1999. Nielsen received no wages from Max One during this time, although he did continue to use the company's pick-up truck and office equipment and also received several loans from Max One.

Financial difficulties eventually forced Nielsen to return to Max One and resume full-time employment as an over-the-road long-haul truck driver. In particular, Nielsen faced loan payments due on a 2000 model Freightliner tractor that he had recently purchased but, due to poor industry conditions, was unable to secure a driving team to operate it. In mid-June of 1999, Nielsen was re-certified as a driver and entered into an agreement with Christensen Transportation, Inc., to lease the tractor and his services as driver for deliveries throughout the United States and Canada. Nielsen received 30 cents per mile for his services, a standard rate of compensation paid to most other solo truck drivers at Max One.

Nielsen's first assignment began on June 29, 1999, and he expected to be on the road for approximately three weeks and to drive approximately 9,000 miles. On July 6, 1999, however, Nielsen was fatally shot in his tractor while waiting to deliver a shipment for Christensen Transportation at an assigned location in Woodbridge, Virginia.

Pamela Nielsen, Vernon Nielsen's wife and sole dependent, subsequently sought worker's compensation benefits from his death under the Missouri Workers' Compensation Law. The ALJ determined that Nielsen suffered his injury while in the course and scope of his employment and that an award was proper; however, the ALJ concluded that "[t]he average weekly wage cannot fairly and justly be determined by the formulas provided in subsections 1 to 3 of Section 287.250" because Nielsen did not receive a fixed wage for all the services he performed as manager and driver and because no usual wage or similar employees existed upon which it could calculate compensation. The ALJ determined that these exceptional facts warranted the application of § 287.250.4 to calculate Nielsen's average weekly wage and set the average weekly wage at $655.47 resulting in a weekly death benefit award of $436.98.

Max One and Star Insurance Co. appealed that award to the Labor and Industrial Relations Commission, which affirmed the ALJ's decision. Appellants now appeal to this Court.

Appellants do not contest that Nielsen was an employee entitled to workers' compensation benefits but rather assert three other points of error on appeal. In their first point, Appellants contend the Commission should not have applied § 287.250.4 [2] in making its determination

2. All statutory references are to RSMo 2000 unless otherwise indicated.

of Nielsen's weekly wage because Nielsen was minimally compensated or because Nielsen's "wage rate could not be ascertained and there was evidence available regarding employees who performed similar services." In their second point, Appellants contend the Commission awarded an incorrect weekly wage. In their final point, Appellants contend the "Commission acted without or in excess of its powers by allowing John P. Madigan, Jr. to sit as a commissioner" because Madigan acted without the advice and consent of the Missouri Senate and beyond the expired term of the appointee whom he originally replaced.

■ In reviewing a workers' compensation award, we review the findings of the Labor and Industrial Relations Commission and not those of the ALJ. *Sullivan v. Masters Jackson Paving Co.*, 35 S.W.3d 879, 883 (Mo.App.2001). "Where, as here, the Commission's award incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award." *Id.* In our review, we disturb the decision of the Commission "only if we find that: (1) it acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or, (4) the record lacks sufficient competent evidence to warrant the making of the award." *Moriarty v. City of Kirksville*, 975 S.W.2d 215, 219 (Mo.App.1998).

■ " 'In determining whether the record possesses sufficient competent evidence to support the Commission's findings and award, we apply a two-step process.' " *Thompson v. Missouri Veterans' Home*, 58 S.W.3d 657, 659 (Mo.App.2001)(*quoting Moriarty* at 219); *see Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995). Under each step, we view the evidence and rea-sonable inferences drawn therefrom in a light most favorable to the Commission's award. Initially, we examine the whole record to determine if the record contains sufficient competent and substantial evidence to support the award. *Thompson* at 659; *Moriarty* at 219; *Davis* at 571. If we find that there is sufficient competent evidence supporting the award, we next consider all evidence in the record, including that evidence which opposes or is unfavorable to the award, taking into account the overall effect of all the evidence, and we determine whether the award is against the overwhelming weight of the evidence. *Thompson* at 659; *Moriarty* at 219; *Davis* at 571.

■ "In our review, we are mindful that we may not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission." *Sullivan*, 35 S.W.3d at 884. The Commission's interpretation and application of the law, however, are not binding on this Court and fall within our realm of independent review and correction where erroneous. *Id.; see also Davis*, 903 S.W.2d at 571. Finally, we note that the workers' compensation law is to be liberally construed with a view to the public welfare. § 287.800.

Appellants' primary point on appeal is that the Commission applied the incorrect statute—§ 287.250.4—when it determined Nielsen's average weekly earnings. Appellants argue that the Commission instead should have applied § 287.250.1(6) because Nielsen received minimal compensation as a manager and intermittent driver for Max One in the year before his death, or alternately because Nielsen's average weekly earnings could not be fixed or ascertained due to the nature of his employment.

Section 287.240(2) requires an employer, in the event of an employee's death, to pay to an employee's dependents "a death benefit based on the employee's average weekly earnings during the year immediately preceding ... the death...." We observe that compensation rates for the purpose of workers' compensation benefits are calculated according to § 287.250, which sets forth specific statutory formulas to calculate benefits based on the average weekly wage an employee received from his or her employer. *See Thompson,* 58 S.W.3d at 661; *Oberley v. Oberley Engineering, Inc.,* 940 S.W.2d 953, 955–56 (Mo.App.1997). Section 287.250.1, in particular, states:

Except as otherwise provided for in this chapter, the method of computing an injured employee's average weekly earnings which will serve as the basis for compensation provided for in this chapter shall be as follows:

....

(6) If the hourly wage has not been fixed or cannot be ascertained, or the employee earned no wage, the wage for the purpose of calculating compensation shall be taken to be the usual wage for similar services where such services are rendered by paid employees of the employer or any other employer;

However, § 287.250.4 also empowers the Commission to determine benefits in the event that an employee's average weekly wage cannot "fairly and justly" be determined by applying the statutory formulas. That provision states:

If pursuant to this section the average weekly wage cannot fairly and justly be determined by the formulas provided in subsections 1 to 3 of this section, the division or the commission may determine the average weekly wage in such manner and by such method as, in the opinion of the division or the commission, based upon the exceptional facts presented, fairly determine such employee's average weekly wage.

■ In this situation, the Commission determined that Nielsen's "average weekly wage cannot fairly and justly be determined by the formulas provided in subsections 1 to 3 of Section 287.250." It recognized that Nielsen did not receive a fixed wage for all the services he performed as manager and driver and that, because of Nielsen's unique situation, no usual wage or similar employees existed upon which it could calculate compensation. As a result, the Commission found that the "exceptional facts" of the case warranted that § 287.250.4 should determine Nielsen's average weekly wage. We find that the Commission's decision is supported by sufficient and competent evidence and affirm.

Section 287.250.4 gives the Commission "considerable discretion in determining an employee's average weekly wage" when there are exceptional facts present. *Oberley* at 958. While the statute does not specifically define "exceptional facts," we note that Missouri courts have upheld the application of the provision when circumstances prevented the Commission from using other statutory formulas to fairly and justly calculate a weekly wage. *See Id.* at 957–58 (exceptional fact existed when president and sole shareholder of S corporation received both wages and payments for personal expenses); *Ash v. Ahal Contracting Co.,* 916 S.W.2d 439, 441 (Mo. App.1996) (intermittent and part-time nature of an employee's work was deemed an exceptional fact that warranted application of § 287.250.4); *but see Thompson,* 58 S.W.3d at 661–62 (no exceptional fact existed when parties disputed whether to include income from separate job, not the calculation of the award itself).

Here, the parties dispute whether the Commission correctly calculated Nielsen's average weekly wage. Each party argues

that the facts relating to Nielsen's employment history would support the application of a different statute and result in a different award of compensation. As *Thompson* indicates, however, § 287.250.4 was provided specifically for instances when exceptional facts made it difficult for the Commission to calculate a claimant's average weekly wage. 58 S.W.3d at 662. For that reason, we find that that Commission correctly relied upon § 287.250.4 to calculate Nielsen's average weekly wage.

Furthermore, substantial and competent evidence similarly exists to support the Commission's finding that "exceptional facts" existed in this case. A review of the testimony indicates that Nielsen formerly worked full-time at Max One as a manager and truck driver. In late 1998, tax concerns caused Nielsen to dissolve Max Line, limit his management duties to that of an "uncompensated officer," and turn over many management and finance duties to ATMS. Although Nielsen continued to receive some *de minimus* indirect benefits in his management capacity, he collected no wage for his duties.[3] Complications with his Social Security benefits also caused Nielsen to cease driving for Max One and seek employment with other companies. In June of 1999, however, financial difficulties dictated that Nielsen return to work as a full-time driver.[4] Nielsen requested to be reinstated as a driver, was re-certified, and began to drive full-time for Christensen Transportation, Inc. Testimony from Claimant indicated that Nielsen had decided to cease looking for a replacement driver and continue driving full-time.[5] In light of these facts, the Commission concluded that at the time of his death Nielsen had "changed the nature of his association with Max One" to become a full-time, solo truck driver seeking a wage consistent with that position.

We agree with the Commission's finding that, as a result of these circumstances, Nielsen's "average weekly wage cannot fairly and justly be determined by the formulas provided in [§ 287.250.1–.3]." Nielsen earned no fixed wage, as he received only *de minimus* benefits as manager and was paid by the mile as a driver. Nor could Nielsen's average weekly wage be based upon the usual wage received by similar employees, as the Commission determined that the evidence did not support a finding that other employees existed who provided the same work and services Nielsen performed for Max One. It ruled that § 287.250.4 should determine the average weekly wage, and, considering the weekly wage of other full-time drivers at Max One, set Nielsen's average weekly wage at $655.47 even though he also performed uncompensated managerial duties for Max One. Based on these "exceptional facts," we find no error. *See Oberley,* 940 S.W.2d at 957–58. Point I is denied.

■ Appellants also contend that, regardless of whether § 287.250.1(6) or § 287.250.4 apply, the evidence does not support the Commission's determination of

---

3. The record reveals that in late 1998 or early 1999, Max One provided Nielsen with a pickup truck and computer system. In the months following and prior to his resumption of full-time driving duties, however, Nielsen only received the indirect benefits from personal use of some office equipment and several small loans.

4. Nielsen had purchased a 2000 Freightliner truck for more than $111,000 with the intent of hiring a driver to work loads. Due to poor industry conditions, however, Nielsen could not find drivers and was forced to return to work in order to make payments on the truck.

5. Respondent testified that Nielsen "decided that he was just going to forget trying to find drivers because it was frustrating, it was time consuming, it was energy consuming. He was just going to quit looking for drivers."

Nielsen's average weekly wage. We disagree.

Appellants argue that the Claimant failed to provide evidence of "the usual wage for similar services where such services are rendered by paid employees of the employer or any other employer" as required by § 287.250.1(6). Under the previous point we concluded that the Commission correctly found that there were "exceptional facts" presented in this case which warranted the application of § 287.250.4. That provision allows the Commission to fairly determine, in its opinion and in consideration of those exceptional facts, Nielsen's average weekly wage. Therefore, the requirements of § 287.250.1(6) are immaterial.

In the alternative, Appellants contend that if § 287.250.4 were to apply in this situation, the Commission should have found that a lower weekly wage resulted since Nielsen earned less than other full-time drivers. We also find that substantial evidence exists to support the Commission's determination of an average weekly wage under § 287.250.4. Testimony from Claimant indicated that Nielsen intended to continue driving full-time due to financial problems. Keri Cuff, an accountant employed by Nielsen, also testified that other similarly situated full-time solo truck drivers earned an average weekly salary of $655.47 during the immediately preceding quarter, an amount also reflected in Nielsen's former salary when he drove on a full-time basis for Max One in previous years. While Appellant contends that the $200.80 in wages Nielsen earned in the week prior to his death was substantially lower than the average weekly wage earned by other full-time drivers, we note that Nielsen did in fact begin a three-week, 9000–mile assignment as part of his new job which was interrupted only by a brief stay at his home during the Fourth of July holiday. Such evidence supports the Commission's determination that Nielsen had "changed the nature of his association with Max One" to become a full-time, solo truck driver seeking a wage consistent with that position. Point II denied.

Appellants' final point on appeal contends the Commission acted without or in excess of its powers by allowing John P. Madigan, Jr., to sit as a commissioner because Madigan acted without the advice and consent of the Missouri Senate and beyond the expired term of the appointee whom he originally replaced. However, we observe that Appellants fail to include in their statement of facts any of the facts upon which Appellant's claim of error is based.

 "The primary purpose of the statement of facts is 'to afford an immediate, accurate, complete and unbiased understanding of the facts of the case ....'" *State v. Bradley*, 8 S.W.3d 905, 906 (Mo. App.2000) (quoting *Wipfler v. Basler*, 250 S.W.2d 982, 984 (Mo.1952)).[6] "Failure to include, in the statement of facts, the facts upon which an appellant's claim of error is based fails to preserve the contention for appellate review." *Kent v. Charlie Chicken, II, Inc.*, 972 S.W.2d 513, 515 (Mo.App. 1998). Appellants have therefore failed to preserve this issue for appellate review. *See Martin v. Morgan*, 61 S.W.3d 300, 301 (Mo.App.2001).

The final award of the Commission is affirmed.

GARRISON, J., and BARNEY, J., concur.

---

6. "Briefing principles applicable to civil cases apply to criminal cases, even though the rules governing appellate briefs are separately stated in Rules 84.04 and 30.06." *Bradley,* n. 3.