

# Missouri Court of Appeals

### Southern District

### Division Two

DENNIS L. HADLEY (DECEASED) by )
NANNETTE HADLEY, )
　 )
　Claimant-Respondent, )
　 )
vs. )　　　No. SD34191
　 )
BECO CONCRETE PRODUCTS, INC., )　　　Filed: November 10, 2016
　 )
　Employer-Appellant. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**AFFIRMED**

BECO Concrete Products, Inc. ("Employer") appeals an award of death benefits to Nannette Hadley ("Claimant") by the Labor and Industrial Relations Commission (the "Commission"). Nannette was the sole dependent of Dennis L. Hadley ("Decedent"), who was a long-time, commercial truck driver for Employer. Decedent was killed in an accident at approximately 8:40 a.m. on July 25, 2012 when the passenger-side tires of the truck and attached flatbed trailer Decedent was driving left the right side of the highway on a sweeping curve to the left and the truck and trailer then crossed the highway and came to rest on the opposite side. The Commission calculated Claimant's death benefit pursuant to sections 287.240(2) and 287.250.4, and rejected Employer's claim that the

1

death benefit should be reduced under section 287.120.5, RSMo Cum.Supp. 2005, because Decedent's death was caused by Decedent's "failure to obey [a] reasonable rule adopted by [Employer] for the safety of employees."[1]  In two points, Employer contends that the Commission "erred as a matter of law" in calculating Claimant's death benefit and in rejecting Employer's claim that the death benefit should be reduced under section 287.120.5.  We deny Employer's points, and affirm the Commission's award.

## Standard of Review

We review the final decision and findings of the Commission and, to the extent adopted or incorporated by the Commission in its decision, the findings and conclusions of the administrative law judge.  *Sell v. Ozarks Medical Center*, 333 S.W.3d 498, 505 (Mo.App. S.D. 2011).

Under article V, section 18 of the Missouri Constitution, judicial review of an administrative body's final decision and findings "shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."  Section 287.495.1 further grants the appellate court "jurisdiction" to review "all decisions of the commission," authorizes an appeal to the appellate court from "[t]he final award of the commission," and provides that the appellate court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award only on the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

---

[1] All section references are to RSMo 2000, unless otherwise specified.

2

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

The constitutional standard of "competent and substantial evidence upon the whole record" is in "harmony" with the statutory standard of "sufficient competent evidence in the record," and neither standard requires a reviewing court to view the evidence and inferences from the evidence in the light most favorable to the Commission's decision. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222, 222-23 (Mo. banc 2003). As a result, in applying these standards, an appellate court's review is limited to "a single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support the award. This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id*. at 223; *Harrah v. Tour St. Louis*, 415 S.W.3d 779, 780 (Mo.App. E.D. 2013).

We review questions of law *de novo*, and defer to the Commission on issues of fact and issues "concerning the credibility and weight to be given to conflicting evidence." *Allcorn v. Tap Enterprises, Inc.*, 277 S.W.3d 823, 827 (Mo.App. S.D. 2009). Further, except for expert testimony on matters that are outside the knowledge and understanding of lay persons and the Commission, "the Commission may decide a case 'upon its disbelief of uncontradicted and unimpeached testimony.'" *Angus v. Second Injury Fund*, 328 S.W.3d 294, 300, 299-303 (Mo.App. W.D. 2010).

To successfully challenge the Commission's factual findings, the complaining party must:

> (1) marshal all record evidence favorable to the award; (2) marshal all unfavorable evidence, subject to the Commission's explicit or implicit credibility determinations; and (3) show in the context of the whole record how the unfavorable evidence so overwhelms the favorable evidence and

3

its reasonable inferences that the award is, in context, not supported by competent and substantial evidence. *See Jordan v. USF Holland Motor Freight, Inc.*, 383 S.W.3d 93, 95 (Mo.App. S.D. 2012).

**Brune v. Johnson Controls**, 457 S.W.3d 372, 377 (Mo.App. E.D. 2015).

Following amendment of Missouri's workers' compensation law in 2005, the provisions of the law shall be construed strictly. Section 287.800.1, RSMo Cum.Supp. 2005.

Before the Commission, a claimant has "[t]he burden of proving an entitlement to compensation under [chapter 287]" and the employer has "[t]he burden of establishing any affirmative defense." Section 287.808, RSMo Cum.Supp. 2005. "[T]he party asserting [any] claim or defense [based on a factual proposition] must establish that such proposition is more likely to be true than not true." *Id*. Employer, as appellant, has the burden in this appeal to establish error that warrants relief. **Smith v. Smalley Container Corp.**, 997 S.W.2d 126, 132 (Mo.App. S.D. 1999); **Giles v. Riverside Transport, Inc.**, 266 S.W.3d 290, 297 (Mo.App. W.D. 2008).

**Analysis**

*First Point*

In its first point, Employer argues that the Commission "erred as a matter of law in finding section 287.250.4 applied in determining" Decedent's average weekly earnings because (1) Decedent's average weekly earnings "had to be determined using" solely section 287.240(2), (2), alternatively, Decedent's average weekly earnings "must be determined by using section 287.250.1(4)," or (3), alternatively, "Claimant failed to make

4

a showing of exceptional facts, as is necessary for application of section 287.250.4." We reject Employer's arguments.[2]

### First Point – Primary Argument

Employer's primary argument ignores the plain language of section 287.240(2) and long standing judicial precedent. Section 287.240(2) in relevant part provides:

> The employer shall also pay to the total dependents of the employee a death benefit based on the employee's average weekly earnings during the year immediately preceding the injury that results in the death of the employee, as provided in section 287.250. The amount of compensation for death, which shall be paid in installments in the same manner that compensation is required to be paid under this chapter, shall be computed as follows:
>
> . . . .
>
> (d) If the injury which caused the death occurred on or after August 28, 1991, the weekly compensation shall be an amount equal to sixty-six and two-thirds percent of the injured employee's average weekly earnings as of the date of the injury; provided that the weekly compensation paid under this paragraph shall not exceed an amount equal to one hundred five percent of the state average weekly wage . . . [.]

The language of the statute clearly states that the employer shall pay "a death benefit based on the employee's average weekly earnings during the year immediately preceding the injury . . ., as provided in section 287.250." Long standing judicial precedent confirms the plain meaning of this language – i.e., that a decedent's average weekly earnings for purposes of determining the decedent's dependents' death benefit is calculated according to section 287.250. *Nielsen v. Max One Corporation*, 98 S.W.3d 585, 590 (Mo.App. S.D. 2003); *Oberley v. Oberley Engineering, Inc.*, 940 S.W.2d 953,

---

[2] We note that Employer seeks to combine three claims of error in one point. By reviewing its point, we do not condone such a practice. *See* Rule 84.04, Missouri Court Rules (2016).

955-56 (Mo.App. S.D. 1997).[3]  Employer's primary argument under its first point is

denied.

*First Point – Alternative Arguments*

Employer next argues that the Commission erred as a matter of law by not using

section 287.250.1(4), rather than section 287.250.4.  We disagree.  In six numbered

subdivisions, section 287.250.1 provides formulas for calculating "an injured employee's

average weekly earnings which will serve as the basis for compensation provided for in

[chapter 287]."  These formulas apply where (1) "the wages are fixed by the week," (2)

"the wages are fixed by the month," (3) "the wages are fixed by the year," (4) "the wages

were fixed by the day, hour, or by the output of the employee," (5) "the employee has

been employed less than two calendar weeks immediately preceding the injury," and (6)

"the hourly wage has not been fixed or cannot be ascertained, or the employee earned no

wage."  In determining which formula to apply, you start with the first formula and then

descend in numerical order until a formula is found that "applies to the particular facts of

the case."  *Adamson v. DTC Calhoun Trucking, Inc.*, 212 S.W.3d 207, 213, 215

(Mo.App. S.D. 2007) (internal quotations and citations omitted).

The fourth numbered subdivision in section 287.250.1, in full, provides:

If the wages were fixed by the day, hour, or by the output of the employee, the average weekly wage shall be computed by dividing by thirteen the wages earned while *actually employed* by the employer in each of the last thirteen calendar weeks immediately preceding the week in which the employee was injured *or if actually employed by the employer for less than thirteen weeks, by the number of calendar weeks, or any portion of a week, during which the employee was actually employed by the employer*. For purposes of computing the average weekly wage pursuant to this subdivision, *absence of five regular or scheduled work days, even if not in*

---

[3] Both of these decisions and many others were overruled on an unrelated ground relating to the standard of review by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223, 224 (Appendix), 226 (Appendix) (Mo. banc 2003).

6

*the same calendar week, shall be considered as absence for a calendar week.* If the employee commenced employment on a day other than the beginning of a calendar week, such calendar week and the wages earned during such week shall be excluded in computing the average weekly wage pursuant to this subdivision[.]

(Emphasis added).

A seventh numbered subdivision in section 287.250.1 provides, in relevant part:

"In computing the average weekly wage . . ., an employee shall be considered to have been *actually employed* for only those weeks in which labor is actually performed by the employee for the employer and wages are actually paid by the employer as compensation for such labor." (Emphasis added).

Section 287.250.3 provides:

If an employee is hired by the employer for less than the number of hours per week needed to be *classified as a full-time or regular employee*, benefits computed for purposes of this chapter for permanent partial disability, permanent total disability and *death benefits* shall be based upon the average weekly wage of a full-time or regular employee engaged by the employer to perform work of the same or similar nature and at the number of hours per week required by the employer to classify the employee as a full-time or regular employee, *but such computation shall not be based on less than thirty hours per week*.

(Emphasis added).

Section 287.250.4 provides:

If pursuant to this section the average weekly wage *cannot fairly and justly be determined* by the formulas provided in subsections 1 to 3 of this section, the division or the commission may determine the average weekly wage in such manner and by such method as, in the opinion of the division or the commission, based upon the *exceptional facts presented*, *fairly determine* such employee's average weekly wage.

(Emphasis added).

The uncontested evidence before the Commission established that, at the time of Decedent's injury and death on July 25, 2012 and during the immediately preceding year,

7

Decedent actually performed labor for Employer on an irregular basis because of a reduction in the number of loads available for him to transport.[4]

"Section 287.250.4 gives the Commission 'considerable discretion in determining an employee's average weekly wage' when there are exceptional facts present." ***Nielsen v. Max One Corporation***, 98 S.W.3d at 590 (citation omitted).  The Commission concluded that the "facts surrounding the nature of [Decedent's] work" (i.e., that Decedent's "work . . . was intermittent and [he] worked less than full-time hours") "constitute[d] exceptional facts as contemplated by § 287.250.4."  On that basis, the Commission applied section 287.250.4 and calculated Decedent's average weekly earnings by averaging the earnings of Employer's two commercial truck drivers "who were consistently working during the year preceding [Decedent's] death."  In these circumstances, we cannot say that the Commission erred as a matter of law in finding that exceptional facts were present, and in exercising its discretion to calculate Decedent's average weekly earnings under section 287.250.4.

We also deny Employer's alternative arguments under its first point.

*Second Point*

In its second point, Employer claims that the Commission "erred as a matter of law in refusing to assess a safety penalty . . . under section 287.120.5[.]"  Employer claims that it adopted a "reasonable rule" that its employees must obey all the rules of the road and that claimant did not obey that rule by driving at an excessive speed for conditions, driving in a careless and imprudent manner and failing to obey traffic control

---

[4]  Under Employer's labor agreement with the union to which Decedent belonged, Employer was required to offer an available load to its drivers in order of seniority.  Decedent was Employer's fourth most senior driver.  Inclement weather also interfered with the work available to Employer's drivers.

devices. The underlying complaint to the careless and imprudent driving and traffic control devices was that it claims Claimant was speeding.

First, we must note that the first sentence of section 287.120 provides that: "Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for . . . death of the employee by accident . . . arising out of and in the course of the employee's employment." Missouri courts have long held that in workers' compensation cases, negligence is immaterial, and the accident for which compensation is sought may be with or without human fault. *Vogt v. Ford Motor Co.*, 138 S.W.2d 684, 687-88 (Mo.App. St.L.D. 1940). Contributory negligence, even gross negligence by an employee, is no bar to compensation in a workers' compensation proceeding. *Griffin v. Anderson Motor Service Co.*, 59 S.W.2d 805, 808 (Mo.App. K.C.D. 1933).

We note the Commission found that Employer had not adopted a valid safety rule. There was ample evidence to support that finding of the Commission as Employer offered no evidence of when and where this incorporation and adoption as a company rule of all federal and state, statutory and administrative law occurred or why its representative did not provide any testimony or documentary evidence of this adoption when he was deposed. Thus, Employer's claim that it had a specific safety rule to obey the rules of the road was rejected by the Commission.

Further, the Commission stated:

> Under employer's rationale, so long as an employer generically admonishes its workers to obey all laws, every motor vehicle accident caused in part by a worker's error or negligence would be subject to the so-called safety penalty. We think if the legislature intended to systematically halve the compensation available to imperfect drivers, it would have said so.

9

Furthermore, Employer's underlying complaint is an assertion that Claimant was speeding; however, there was ample testimony rebutting that assertion in the record. This was not a question of law, but a weight-of-evidence determination upon which we defer to the Commission.

Employer's second point is denied, and the Commission's award is affirmed.


Nancy Steffen Rahmeyer, J. - Opinion Author

Gary W. Lynch, P.J. - Concurs

Daniel E. Scott, J. - Concurs