

# Missouri Court of Appeals

### Southern District

#### In Division

DEPENDENT[] OF RUSSELL HAYES, Deceased )
)
SUSAN HAYES, )
)
          Appellant, ) No. SD37841
)
  vs. ) FILED: January 10, 2024
)
CITY OF ELDORADO SPRINGS, )
)
          Respondent. )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **REVERSED AND REMANDED WITH DIRECTIONS**

      The Labor and Industrial Relations Commission ("Commission") awarded Susan Hayes ("Wife") $40 per week in benefits for the death of her husband, Russell Hayes ("Husband"), who died while working as a volunteer firefighter for the City of El Dorado Springs, Missouri, ("Employer"). In the first of three points on appeal challenging the Commission's award, Wife contends the Commission misapplied the law in its determination that Husband's weekly wage could not be determined under section 287.250.1(6) and by calculating its award, instead, under section 287.250.4.[1] Because this point has merit, we reverse the Commission's award, do not reach Wife's remaining points, and remand for further proceedings consistent with this opinion.

---

[1] Unless otherwise specified, all statutory references are to RSMo 2016.

## Standard of Review

"We review the final decision and findings of the Commission and, to the extent adopted or incorporated by the Commission in its decision, the findings and conclusions of the Administrative Law Judge." *Hadley v. Beco Concrete Products, Inc.*, 505 S.W.3d 355, 357 (Mo.App. 2016). We may only modify, reverse, remand for rehearing, or set aside a workers' compensation award upon a finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the Commission's factual findings do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495.1; *Malam v. State, Department of Corrections*, 492 S.W.3d 926, 929 (Mo. banc 2016).

"Although the [C]ommission's decision is afforded substantial deference, this Court must still examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Malam*, 492 S.W.3d at 929 (internal quotation marks omitted). "We review questions of law *de novo*, and defer to the Commission on issues of fact and issues concerning the credibility and weight to be given to conflicting evidence." *Hadley*, 505 S.W.3d at 358 (internal quotation marks omitted). Following the amendment of the Missouri workers' compensation law in 2005, the provisions of the law are construed strictly. Section 287.800.1.

Before the Commission, a claimant has "the burden of proving an entitlement to compensation under chapter 287 and the employer has the burden of establishing any affirmative defense." "The party asserting any claim or defense based on a factual proposition must establish that such proposition is more likely to be true than not true." *Id.*

## Factual Background and Procedural History

Husband served as a volunteer firefighter and emergency medical technician for several

decades. In 2018, Husband was fatally injured while transporting a fire engine for Employer when he was ejected from the vehicle in a rollover accident. Employer concedes that Husband received a qualifying injury causing his death and Wife is entitled to certain death benefits under the law. The only dispute between the parties concerns the precise amount of the weekly death benefit to which Wife is entitled.

An evidentiary hearing was held before a Division of Workers' Compensation ("Division") Administrative Law Judge ("ALJ"). The parties reached a pre-hearing stipulation whereby the "sole issue to be resolved" was "[w]hether the employee's average weekly wage is an amount that results in a compensation rate in excess of the statutory minimum of $40.00 per week." The only witnesses to testify at the hearing were Wife and her two expert witnesses, Lieutenant Brian Zinanni ("Lieutenant Zinanni"), a career firefighter and paramedic, and Phillip Eldred ("Eldred"), a certified vocational expert.

According to Wife, Husband was on call 24 hours a day as a volunteer firefighter for Employer. And except for nights working as an in-home aide for the Missouri Department of Mental Health, Husband would stop what he was doing to respond to firefighting calls. If the calls required Husband to act in some fashion, the rate of compensation was $10 per response inside city limits and $20 per response outside city limits. But if no action was required, the rate of compensation was reduced from $10 to $4 and from $20 to $6. Wife understood these rates of compensation to be reimbursement for mileage. On cross-examination, Wife testified that Husband did not have to spend his time between firefighting calls at a firehouse.

Lieutenant Zinanni testified that he has decades of firefighting experience, including as a career firefighter in Clayton, Missouri, as well as a volunteer firefighter in Rock Falls, Illinois. Lieutenant Zinanni provided his opinion on the level of compensation Husband would have

3

received, based upon Husband's experience, had Husband been employed as a career firefighter. Lieutenant Zinanni confirmed that wage data compiled by Eldred reflected the "average" wages of career firefighters in the localities from which such data was received. Furthermore, while he was not directly familiar with Husband's specific duties as a volunteer firefighter, Lieutenant Zinanni testified that "as a general rule most firefighters have similar job expectations."

Eldred's testimony generally addressed the vocational report he generated concerning Husband's employment as a volunteer firefighter. That report included wage data for firefighters generally, including the mean annual salaries for full-time firefighters nationally, within Missouri, and within southwest Missouri nonmetropolitan areas. The report also included a general firefighter job description, as well as Employer's volunteer firefighter job description.

Although Employer did not present any witness testimony, it offered several exhibits that were received into evidence. The exhibits were a wage statement for Husband, Husband's personnel file, Employer's job description for the volunteer firefighter position, Husband's historical pay information, and a wage statement for Employer's fire chief.

The ALJ found that while Husband "was paid per call responded to[,]" "[t]he nature of responding to emergency calls is unpredictable[.]" According to the ALJ, section 287.250.1(6) may apply to Husband because, had he been paid a wage, he "was not paid by any fixed hourly wage, and thus the wage cannot be determined . . . ." Yet, the ALJ adjudged that Wife failed her burden to present evidence to facilitate a calculation under section 287.250.1(6). The ALJ first found "[Wife] has put forth no evidence regarding the usual wage for similar services rendered by paid employees of the employer." But the ALJ found "[Wife], through exhibit and expert testimony, has introduced evidence on the average wage of career firefighters in the State of Missouri and in southwestern Missouri rural fire departments." The ALJ dismissed this

4

introduced evidence, however, for the following reasons:

> [Wife]'s argument seems to ask for an assumption that the services rendered by a full-time career firefighter and by a rural volunteer firefighter are similar. This Court cannot assume facts not in evidence. What evidence does exist on this point comes from the live testimony of [Wife], who testified that [Husband] never had to stay for a fixed period at the fire house and would only respond to calls when he was available. Furthermore, in the absence of more specific evidence, the pay of a neighboring full-time firefighter is not indicative of [the] pay [of] a volunteer firefighter. ***Johnson v. City of Duenweg Fire Dept.***, 735 S.W.2d 364 (Mo. banc 1987) [overruled on unrelated grounds by ***Hampton v. Big Boy Steel Erection***, 121 S.W.3d 220, 224 (Mo. banc 2003)].

(Bold added.)

As such, the ALJ ultimately concluded that no such wage evidence had been introduced in either respect and thus did not rely on any credibility determinations. Then having found that no statutory formula could be utilized in calculating Husband's average weekly earnings for purposes of death benefits, the ALJ turned to section 287.250.4. Noting that Husband's historical compensation never exceeded $40 per week, the ALJ concluded that the "just and fair" compensation is the statutory minimum.

Wife filed an application for review with the Commission, which ultimately issued the final award affirming, by a vote of 2-to-1, the ALJ's decision in its entirety. Wife timely appeals that award.

## **Discussion**

The law requires Employer to pay, among other things, a death benefit based on Husband's average weekly earnings during the year immediately preceding the injury that resulted in his death. *See* section 287.240(2). Formulae by which average weekly earnings are calculated can be found within the provisions of section 287.250. Those provisions address a variety of situations, including whether the employee's wages were fixed by the week, month, year, day, hour, or output; whether the employee was employed for less than two weeks; whether

5

the employee received gratuities, fringe benefits, board, rent, housing, or lodging; and whether the employee was employed on a part-time basis. Section 287.250.1-.3.

As noted above, the provision relevant to the Commission's award and this appeal provides that

> [i]f the hourly wage has not been fixed or cannot be ascertained, or the employee earned no wage, the wage for the purpose of calculating compensation shall be taken to be the usual wage for similar services where such services are rendered by paid employees of the employer or any other employer[.]

Section 287.250.1(6).

Barring the ability to "fairly and justly" determine the average weekly wage under the aforementioned provisions, the Division or the Commission is authorized to determine the average weekly wage in such manner and by such method as, in the opinion of the Division or the Commission, and "based upon the exceptional facts presented," "fairly" determines such average weekly wage. Section 287.250.4. But, regardless of the wage calculation ultimately utilized, a death benefit award cannot be less than $40 per week. Section 287.240(2)(e).

Wife's first point, which follows the well-reasoned analysis of the dissenting opinion appended to the Commission's award, is dispositive. Wife contends that by ruling Husband's average weekly wage could not be determined because of lack of evidence under section 287.150.1(6), the Commission misapplied the law. Taking issue with that ruling in two respects, Wife argues the Commission erred in its reliance on *Johnson v. City of Duenweg Fire Dept.*, and erred in finding there was no evidence in the record that the services Husband provided as a volunteer firefighter were similar to the services provided by full-time career firefighters. Both arguments have merit.

The Commission, as noted above, cited to *Johnson v. City of Duenweg Fire Dept.* for the proposition that "in the absence of more specific evidence, the pay of a neighboring full-time

6

firefighter is not indicative of [the] pay [of] a volunteer firefighter." ***Johnson*** is not applicable in this matter for several reasons. Like the instant case, ***Johnson*** involved a workers' compensation award for the statutory minimum after a volunteer firefighter had received a qualifying injury. 735 S.W.2d at 368. On appeal, the claimant asserted that the Commission's award violated the following wage provision:

> [i]n the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable then of neighboring) employments[.]

*Id.* (quoting section 287.250(6), RSMo 1978). However, Section 287.250(6), RSMo 1978, is no longer in force. Further, Section 287.800 has also been amended to require strict construction of workers' compensation statutes rather than liberal construction.[2]

The current section 287.250.1(6) clarifies and states succinctly how to determine the appropriate wage. The "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." ***Peters v. Wady Industries, Inc.***, 489 S.W.3d 784, 789 (Mo. banc 2016) (internal quotation marks omitted). The plain language under section 287.250.1(6) simply requires that the appropriate wage shall be the "usual wage for similar services" provided by paid employees of any employer.

The Commission stated that "in the absence of more specific evidence, the pay of a

---

[2] Johnson is further distinguishable, as the ***Johnson*** court upheld the Commission's award on the basis that the claimant failed to produce evidence from which the average annual earnings of firefighters could be determined. *Id.* at 368-69. The claimant's evidence of the pay received by city employees was deficient because those employees had duties beyond or other than firefighting. *Id.* at 369. The claimant's evidence of the pay received by other volunteers was deficient because those volunteers were paid only a nominal amount. *Id.* And although the claimant presented testimony from the District Chief for the City of Joplin Fire Department that a regularly employed fire fighter with comparable experience to that of the claimant received about $1,300 per month, this evidence was deficient because the witness added, "that he was not certain of the amount." *Id.* None of these issues are present in the current action.

neighboring full-time firefighter *is not indicative of [the] pay [of] a volunteer firefighter*." (Emphasis added.) But Wife did not seek to prove the pay of a volunteer firefighter. Rather, it is the "usual wage for similar services" that is responsive to section 287.250.1(6) and that is what Wife sought to prove. As acknowledged by the Commission, Wife "introduced evidence on the average wage of career firefighters in the State of Missouri and in southwestern Missouri rural fire departments." We note the words "average" and "usual" are synonymous. *Usual*, BARTLETT'S ROGET'S THESAURUS (1st ed. 1996). Thus, while section 287.250.1(6) plainly states that the "usual" wage is used for the purposes of calculation, we see no distinction between that word and the word "average" used by Lieutenant Zinanni and found by the Commission to describe the wage data provided by Eldred's report.

Having found that Wife presented evidence of the "usual wage" of firefighters, the Commission did not then compare the services provided by such firefighters to the services provided by Husband as a volunteer firefighter to determine whether those services are "similar" as is required by section 287.250.1(6). Rather, the Commission misapplied the law in suggesting that Wife was misguided in asserting "that the services rendered by a full-time career firefighter and by a rural volunteer firefighter are similar" and in ruling that "[t]his [Commission] cannot assume facts not in evidence" as the record reveals that such evidence was produced by Wife.

In so ruling, it is clear that the Commission did not consider, and made no credibility determination as to Lieutenant Zinanni's testimony that "as a general rule most firefighters have similar job expectations." The Commission also failed to consider and made no credibility determination as to Eldred's testimony or his report that listed the general job description for a firefighter and Employer's job description for a volunteer firefighter, much of which overlapped. The Commission did, however, refer to other evidence, stating, "[w]hat evidence does exist on

8

this point comes from the live testimony of [Wife], who testified that [Husband] never had to stay for a fixed period at the fire house and would only respond to calls when he was available." But none of this testimony by Wife was contradictory or impeaching. The record contains no suggestion that volunteer firefighters have to respond to all calls, despite availability, or have to stay at a firehouse when not responding to calls to provide "similar services" to those of other firefighters. Where, as here, "the record is wholly silent concerning the Commission's weighing of credibility and neither the claimant nor the experts testifying on his or her behalf are contradicted or impeached, the Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence." *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45, 59 (Mo.App. 2019) (internal quotation marks omitted). As such, the Commission erred in failing to consider the testimony and documentation provided by Lieutenant Zinanni and Eldred, which was relevant to the requirements of section 287.250.1(6).

Employer's argument to the contrary focuses entirely on the Commission's findings concerning the amount of money (which Employer characterizes as a "wage") Husband previously earned as a volunteer firefighter. This argument fails for several reasons. First and foremost, the Commission did not address Husband's previous earnings until, after having rejected section 287.250.1(6), it applied section 287.250.4. Therefore, whether Husband's previous earnings were a "wage" is not relevant to our discussion of whether the Commission misapplied section 287.250.1(6). While it is true that section 287.250.1(6) is not applicable in every situation where an employee earns a wage, it is applicable where, as the Commission found here, "the hourly wage has not been fixed or cannot be ascertained[.]" Also not relevant to our discussion is whether Husband earned less than $40 a week. Section 287.250.1(6) contains no requirement preventing the "usual wage for similar services" from exceeding an employee's

9

earnings. The plain language of section 287.250.1(6) clearly allows for such a situation, in that, at a minimum, it allows a wage to be calculated for an employee who earned very little or even "no wage" by utilizing the "usual wage" paid to others.

For the foregoing reasons, point 1 is granted. We need not reach Wife's remaining points.

## Decision

The Commission's award is reversed and the case is remanded. Upon remand, the Commission shall determine whether, consistent with this opinion, a wage for the purpose of calculating compensation in the form of the "usual wage for similar services" can be determined under section 287.250.1(6).

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR
DON E. BURRELL, J. – CONCURS
MARY W. SHEFFIELD, J. – CONCURS